# MAY, 1910.

AUGUSTA A. COX, RELATOR, v. J. T. ROBISON, COMMISSIONER, ETC., RESPONDENT.

No. 2005. Decided May 4, 1910.

**Unsurveyed School Land—Application to Purchase—Incorrect Survey.**

An applicant for the purchase of unsurveyed school land under the Act of April 15, 1905 (Laws 29th Leg., chap. 103, sec. 8, p. 159) who has had made and returned a survey of same found by the Land Commissioner to be incorrect because of conflict with previous grants, acquired no right to purchase the land as against a subsequent applicant who has had a correct survey made and returned. To entitle himself to purchase he should have had a correct survey made, or a correct survey under a new application, before the rights of the adverse applicant attached.

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office, Maxey, an adverse claimant to purchase the land in controversy, being made co-respondent.

*D. H. Doom,* for relator.

*Wm. E. Hawkins,* Acting Attorney-General, and *L. A. Dale,* Assistant, for respondent.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an original proceeding in this court by which relator seeks to have a writ of mandamus issued against respondent Robison, requiring him to perform certain duties hereinafter named with reference to the lands in controversy. The land is described thus: "A survey of three hundred and fifty-one acres of land, situated in the counties of Travis and Burnet, in the State of Texas, being public free school land, unsurveyed and detached and surrounded by other surveys."

The petition contains allegations of previous applications by other

parties who are not interested in this proceeding and which we will not consider in this opinion.

On the 27th day of October, 1906, the land in controversy was subject to sale under the laws of this State, and on that day relator filed with the county surveyor of Travis County his application for a survey of the land, which survey was made on the 7th day of November, 1906, and the application and field notes were filed in the General Land Office on the 6th day of December, 1906. The field notes were examined by the Commissioner on the 21st day of January, 1907, and found by him to be in conflict with other surveys, of which fact the surveyor of Travis County, who had surveyed the land, was notified on February 2, 1907.

A. M. Maxey filed his application for a survey of the same land with the surveyor of Travis County on the 24th day of December, 1908, and the land was surveyed on that application on the 11th day of February, 1909. The application of Maxey and the field notes were returned to and filed in the General Land Office March 3, 1909, and were found to be correct, except for the conflict with the preceding survey of the same land for relator.

On the 16th day of February, 1909, corrected field notes of the survey made under the application of relator were filed in the General Land Office. The Commissioner notified the surveyor of Travis County of the incorrectness of the field notes first made for relator under his application on March 28, 1907, and also on July 23, 1907. January 15, 1908, notice was given to relator of the necessity to have the correction made in the field notes under which he claimed.

The respondent Commissioner refused to classify and value the land on relator's application because Maxey's application had been filed prior to the return of the corrected field notes made for relator. Relator seeks to have this court issue a writ of mandamus requiring the Commissioner of the General Land Office to classify and appraise the land under his application so that he can proceed to complete his purchase.

Since the institution of this suit F. M. Cox has died, and his widow, Augusta A. Cox, was made party as relator.

Relator claims to have acquired a right to have the Commissioner perfect his application for the purchase of the land in question under the provisions of section 8 of chapter 103, General Laws of the Twenty-ninth Legislature, approved April 15, 1905. (See General Laws 1905, p. 159.) The eighth section of the said Act provides for the sale of the unsurveyed school lands of the State upon application to be made by the proposed purchaser accompanied by the oath prescribed, which application and oath are required to be filed with the surveyor of the county in which the land is situated. The oath by F. M. Cox having been filed with the surveyor of Travis County, the duty of the surveyor and of the Commissioner is prescribed by the statute as follows: "It shall be the duty of the surveyor to file and record such application, and to survey the land and file the application and field notes in the Land Office within ninety days from the date of the filing of the application, together with a properly prepared and certified sketch of the survey, with the variations at which

all lines were run. The land shall be surveyed under the instructions of the Commissioner of the General Land Office, and where practicable, into sections of six hundred and forty acres each, and of a regular form. The applicant shall pay to the surveyor one dollar as a filing fee, and his further lawful fees for surveying the land. When the surveyor returns the application and field notes to the Land Office, he shall report under oath the classification and market value of the land, and also the timber thereon and its value, which may be considered in connection with such other evidence as may be required in determining the class and price to be given the land or timber. If upon inspection of the papers, the Commissioner is satisfied from the report of the surveyor and the records of the Land Office, that the land is vacant and belongs to the school fund, and the survey has been made according to law, he shall approve same and notify the applicant that the land is subject to sale to him, stating the classification, price and terms, which shall be the same as that for surveyed lands, except as herein provided."

The tract of land in question contained less than 640 acres and was surrounded by older surveys, was not in an inclosure and had no improvements upon it. If relator's field notes had been correct he would have acquired a right to purchase the land and the Commissioner could not have lawfully refused to place a valuation upon the land and do those things necessary to enable the applicant to complete his purchase. This was a privilege granted to any applicant to purchase. Cox secured a preference to purchase by filing his application subject to the condition of the diligent prosecution of it prescribed by the statute. In order to invoke the action of the Commissioner it was necessary that the surveyor should, within the time prescribed, have returned *correct field notes* of the survey. The law prescribes no duty to be performed by the Commissioner upon the return of incorrect field notes, but if found to be correct, then it was his duty to value the land and give notice to the applicant so that he might complete his purchase. The Commissioner did voluntarily notify the surveyor and the applicant both of the incorrectness of the field notes, and, at any time prior to the day on which Maxey filed his application, Cox might have filed another application and procured a *correct survey* and return of the field notes; or he might have had the field notes corrected and returned under his former application and if accepted by the Commissioner he would have acquired title to the land.

On the 24th day of December, 1908, the land being unappropriated and subject to purchase, Maxey initiated the statutory proceeding to acquire the land by filing his application, and a survey having been made on his application before the corrected field notes of the survey made upon Cox's application were returned to the General Land Office, Maxey acquired a right to purchase the land superior to the claim of Cox which he perfected according to the provisions of the statute. The Commissioner rightly decided under this state of facts that Maxey had the superior right to purchase the land and properly awarded it to him. The writ of mandamus is therefore refused.

*Mandamus refused.*