J. E. Anderson v. J. T. Robison, Commissioner of General Land Office, et al.

No. 3956.   Decided December 20, 1924.

(267 S. W., 456).

**1.—Public Land—Purchase and Sale—Regulations of Land Office.**

The Land Commissioner, being required to determine whether land which one has applied to purchase is vacant and belongs to the school fund (Art. 5432, Vernon's Sayles' Statutes, 1914) could prescribe a rule as to means of ascertaining that fact; and the requirement that applicant furnish more than one affidavit, by disinterested persons, in proof that a former applicant for the land as homestead had never made settlement etc., thereon was a reasonable regulation.   (P. 259).

**2.—Same.**

The right of an applicant for purchase of public land to preferance over one subsequently applying therefor is conditioned on his diligent prosecution of his proposed purchase in accordance with the statute and reasonable regulations of the Land Office.   Gallup v. Thacker, 103 Texas, 310; Cox v. Robison, 103 Texas, 354.   (Pp. 260, 261).

**3.—Same.**

The law fixing no time limit on a purchaser's compliance with reasonable requirements of the Land Office as to his furnishing proof that the land was vacant and unoccupied, it was within the power of the Land Commissioner to prescribe such limit, a requirement here not complied with. (Pp. 261, 262).

**4.—Same.**

The claim of an applicant to purchase public land who has failed for ten years to comply with a requirement of the Land Office that he furnish evidence of the abandonment of a previous claim on same by a homesteader, is not perfected by the furnishing of such proof by another who has applied to purchase it while he was so in default.   (Pp. 259, 260).

**5.—Same—Case Stated.**

Files upon public land by homestead claimants were not followed by settlement or proof of improvements.   More than twenty years later, B., applying to purchase it as vacant and unsurveyed school land, had field notes of a survey returned, and was thereupon notified by the Land Office of the necessity, under the rules, of his filing corrected field notes and proof of its abandonment by the homestead claimants.   He failed to do so until, and more than ten years later, A. applied to purchase it and complied fully with the statute and with the land office requirements.   *Held* that A. was, and B. was not, entitled to have the land valued for sale and awarded to him as a purchaser.   (Pp. 251-262).

Original application by Anderson to the Supreme Court for writ of mandamus against Robison as Commissioner of the General Land Office.   Walter Brown, an adverse claimant of the right to purchase

from the State certain school land here involved, was also made respondent.

*G. B. Smedley,* for relator.

Standing of the homestead claims of the Bodes. Rev. Stats., 1879, art. 3948; Gallup v. Thacker, 103 Texas, 310; Wise County Coal Co. v. Phillips, 51 S. W., 331; Daughty v. Hall, 59 Texas, 518; Prideaux v. Glasgow, 21 S. W., 276.

Rights acquired by respondent Brown. Rev. Stats., art. 5432; Amendment by Act of April 3, 1919, Laws, 36th Leg., ch. 163; Juencke v. Terrell, 98 Texas, 237; Fitzgerald v. Robison, 110 Texas, 468; Gallup v. Thacker, 103 Texas, 310.

Abandonment of rights by Brown. Cox v. Robison, 103 Texas, 354.

*W. A. Keeling,* Attorney-General, and *W. W. Cave,* Assistant, for respondents.

The lands involved in this case, on November 26, 1912, and on November 2, 1922, and continuously since and long prior to said dates, respectively, were, and are now surveyed lands belonging to and constituting a part of the public free school fund of this State. Revised Statutes of 1879, Title 79, Chapter 9, being Articles 3937 to 3951, inclusive; Revised Statutes of 1895, Title 87, Chapter 8, being Articles 4160 to 4174, inclusive; Revised Civil Statutes of 1911, Articles 5278, 5377 and 5385; Section 8, Chapter 163, page 312 (316) General Laws, Regular Session, 36th Legislature, being Article 5432a of Vernon's Texas, Civil and Criminal Statutes, 1922 Supplement; Hogue v. Baker, 92 Texas, 58; Gallup v. Thacker, 103 Texas, 310; Wise County Coal Co. v. Phillips, 51 S. W., 331; Daughty v. Hall 59 Texas, 518; Prideaux v. Glasgow, 21 S. W., 276; Landry v. Robison, 110 Texas, 295; Sibley v. Robison, 212 S. W., 933; Atkinson v. Ward, 61 Texas, 383; Dry Land Cattle Company v. State, 68 Texas, 526; Winsor v. O'Connor, 69 Texas, 571; Adams v. Railway Co., 70 Texas, 252; Groesbeck v. Harris, 82 Texas, 411; McLeary v. Dawson, 87 Texas, 533; Faulk v. Sanderson, 89 Texas, 692; Juencke v. Terrell, 98 Texas, 237: Fitzgerald v. Robison, 110 Texas, 468; Kuechler v. Wright, 40 Texas, 606; Eyl v. State, 84 S. W., 607.

Since the survey of same under the Bode application these lands have remained and are now "titled or equitably owned" within the meaning of Section 2 of Article 14 of our State Constitution as construed by our Supreme Court in Atkinson v. Ward, 61 Texas,

383; Day Land Cattle Company v. State, 68 Texas, 526; Winsor v. O'Connor, 69 Texas, 571; Adams v. Railway Co., 70 Texas, 252; Groesbeck v. Harris, 82 Texas, 411; McLeary v. Dawson, 87 Texas, 538; Faulk v. Sanderson, 89 Texas, 692; Juencke v. Terrill, 98 Texas, 237, and Fitzgerald v. Robison, 110 Texas, 468.

Surveyed lands belonging to the public free school fund of the State can be sold only upon the dates, after advertisement, and to the highest bidder, and otherwise in compliance with our statutes governing such sales, and may not be sold in the manner provided by law for the sale of unsurveyed lands belonging to said fund Chapter 163, p., 312, Gen. Laws, Reg. Ses. 36th Legislature, approved April 3, 1919; Chapter 103, p., 159, Gen. Laws, Reg. Ses. 29th Legislature, approved April 15, 1905; Chapter 9, Title 79, Vernon's Statutes, 1914-1918-1922.

We respectfully submit that neither the petition of Relator Anderson nor the answer of Respondent Brown states a cause of action against this respondent and, further, that upon the law and facts the writ of mandamus should not issue with respect to either as prayed for, or, if we are in error in this, that the facts show respondent Brown to have the better right and that relator Anderson is not entitled to the relief he prays for.

*Walter Brown*, respondent, *in pro. per.*

Mr. Presiding Judge POWELL delivered the opinion of the Commission of Appeals, Section B.

On October 23, 1891, C. J. Bode, a homesteader, made application to the State of Texas for 118.7 acres of public land situated in Webb County, Texas. On the same day, Alex Bode, a single man, made application for eighty acres of land in the same county. On November 25, 1891, field notes of the two surveys, after being duly recorded by the County Surveyor of Webb County, were filed in the General Land Office of Texas. These field notes were there endorsed as correct on the map on May 8, 1895.

Neither of the said Bodes, nor any assignee of either of them, ever made or filed in the General Land Office proof of settlement and improvement as required by law, or filed any affidavit of any kind with reference to occupancy and improvement. Therefore, no patent was ever issued to the Bodes or any assignee.

On November 26, 1912, Walter Brown, under Article 5432, Revised Civil Statutes of Texas of 1911, filed his application with the County Surveyor of Webb County, Texas, for the two Bode tracts aforesaid. He was undertaking to purchase it as unsurveyed

school land, as stated in his application. On January 16, 1913, the County Surveyor aforesaid made the survey for Brown and certified to the field notes two days later. Then, after recording the field notes in the county where the land was situated, they, together with the application, were filed in the General Land Office of Texas on January 25, 1913. Four days later, the said Brown forwarded to the Land Office, in connection with his application and field notes, two affidavits, both of which had been made by one Francisco Contreras on January 6, 1913. One of these affidavits referred to one of the Bode surveys and another to the other. There was but one affidavit to each of the tracts of land. These affidavits were to the effect that neither of the Bodes nor anyone else had made any improvements upon land during the preceding twenty years, and that the said land was still vacant and in the possession of no one.

On February 19, 1913, a draftsman in the Land Office endorsed on the field notes filed by Brown that they were in conflict with the two Bode surveys aforesaid, but otherwise, were correct on the map of Webb County.

On February 28, 1913, Commissioner Robison wrote a letter to Walter Brown, "referring to the application and field notes which had been filed by said Brown, in which he advised him that there was in the land office no proof of occupancy of said land by C. J. Bode or by Alex Bode and no proof of abandonment of the said land by C. J. Bode and said Alex Bode, and that if non-occupancy of said land were shown by affidavits of at least three credible citizens of Webb County, the surveys made for the said Bodes could be cancelled and the matter of the sale of the land as scrap land could be taken up." Brown made no reply to that letter for almost ten years, and then only under the circumstances we shall hereafter set out.

On November 2, 1922, J. E. Anderson, believing these Bode tracts to be vacant or unsurveyed school land and subject to sale under Article 5432 of Vernon's Sayle's Statutes, as amended by the Act of 1919, and in strict compliance with that Act, and being a qualified purchaser thereof, "made and signed a written application of inquiry addressed to the Commissioner of the General Land Office and delivered the same to the Commissioner of the General Land Office on said date, and the same was filed in the General Land Office on November 2nd, 1922. The said letter of inquiry gave the Relator's post office address and stated that he desired to buy the land if it should be for sale and described the land sufficiently to designate it, describing it substantially as it has been hereinbefore described.

"On December 1st, 1922 the Commissioner of the General Land Office wrote and mailed a letter to the Relator, referring to his said

letter of inquiry, in which letter he advised the Relator in substance that it was doubtful whether the said area belonged to the public free school land and was subject to sale under said Act and gave to Relator the name and address of an authorized surveyor with whom he might contract for the survey of the land. The said letter of the Commissioner in stating that the existence of the area as public school land was doubtful, made reference to the fact that the area was covered by two surveys known as preemptions Nos. 536 and 537 in the name of C. J. Bode and Alex Bode, and further that the area was covered by an application of the Respondent, Walter Brown, which had not been rejected." .

After hearing from Commissioner Robison on December 1, 1922, as aforesaid, Anderson, on December 9, 1922, "caused to be filed in the General Land Office two affidavits, one by Francisco Contreras and the other by Blas Pena, both of whom are disinterested and credible citizens of Webb County, Texas, both of which affidavits were subscribed and sworn to on December 8th 1922 before Miguel Pena Villareal, a disinterested Notary Public of Webb County, Texas. These affidavits stated in substance that neither the said C. J. Bode nor the said Alex Bode had ever resided upon or had made improvements upon the tracts of land by them respectively applied for, and that the facts with reference to such residence and improvement were within the knowledge of the affiants. The said affidavits, after being filed in the General Land Office, were placed in the files relating to the said two Bode surveys."

*After* the filing of these necessary affidavits by *Anderson*, the Commissioner, on December 11, 1922, "wrote to the Respondent Walter Brown referring to the letter of the Commissioner of February 28, 1913, above described, and advising him that no additional evidence had been received and that the two affidavits which had been filed by the one witness as to the two separate tracts were not sufficient, and advising the said Brown that he would be given a reasonable time to file additional evidence and that if he did not do so his application would be rejected. In the said letter the Respondent, J. T. Robison, stated that an application had been made for a permit to prospect for oil and gas upon the said land. Respondent Brown replied to the letter last referred to and requested additional time in which to file affidavits. On December 20th. 1922, the Respondent Robison, Commissioner, again wrote Respondent Brown giving him 20 days more time in which to file affidavits, and advising him that he must have affidavits of at least two persons.

"On January 30th, 1923, there was received in the General Land Office in a letter from the Respondent Walter Brown, an affidavit, dated January 29th, 1923, made by Francisco Contreras stating

in substance that there was no sign that anyone had occupied the land above described and that it was covered with brush. This affidavit was subscribed and sworn to on January 29th 1923 by the said Francisco Contreras before the Respondent Walter Brown, who signed the jurat as Notary Public of Webb County. Texas. No other or additional affidavit was filed in the Land Office by the Respondent Walter Brown.''

In the meantime, Anderson, having, on December 9, 1922, complied with the regulations with reference to showing adandonment of the premises in controversy by the Bodes, diligently perfected his own claim, complying with Article 5432 aforesaid in every respect. For instance, on February 26, 1923, Anderson ''filed with the County surveyor of Webb County, Texas, his written application requesting the said County Surveyor to survey for him in pursuance of his said letter of inquiry, the tract of land above described, and at the same time paid to the County Surveyor $1, as a filing fee. The said application was in proper form and in the form prescribed by the Commissioner of the General Land Office and sufficiently described the land, describing it substantially as it has hereinbefore been described, and said application was filed by the County surveyor on February 26th, 1923, and duly recorded by him in his records.

''Thereafter, on February 26th, 1923, and within 90 days from the date of the aforesaid advice from the Commissioner of the General Land Office, E. J. Foster, County Surveyor of Webb County, Texas, surveyed under Relator's said application the said tract of land and prepared field notes therefor, which field notes were duly certified to by the County surveyor on February 27th, 1923 and referred to the survey as survey No. 2336, and correctly described the land, and described it substantially as it has been hereinbefore described. The said field notes, after being duly recorded by the said County Surveyor, were returned to and filed in the General Land Office within 90 days after the date of the Commissioner's said advice, to-wit, on February 28th, 1923.

''Thereafter, on March 9th, 1923, the said field notes were duly examined by the Commissioner of the General Land Office thru one of his draftsmen, and were found to be correct and were approved and endorsed as correct, the endorsement stating that the survey covered the C. J. Bode survey and the Alex Bode survey and also the Walter Brown survey No. 2336, and that otherwise the field notes were correct. The said field notes were in fact correct and correctly described the land, and in their description of the land were identical with field notes of said area which were caused to be filed in the General Land Office by the Respondent, Walter Brown, and which are hereinafter referred to.

"On March 15th, 1923, the Relator requested the Respondent, J. T. Robison, the Commissioner of the General Land Office, in pursuance of his said application to classify and value the land and to mail notice to him of such action giving the classification, price and terms in order that he might file formal application to purchase the land in pursuance of his said letter of inquiry and in pursuance of the said survey. The Respondent, J. T. Robison, Commissioner of the General Land Office, thereupon declined and refused to classify or value the land or to mail notice of his action to the Relator, his said refusal being based upon the fact then and there stated by him that there was pending and on file in the General Land Office an application by the Respondent, Walter Brown, to purchase the said land, which application is more fully hereinafter referred to, and the Respondent, J. T. Robison, Commissioner, then and there stated his purpose and intention to sell and award the land to the Respondent, Walter Brown, on his application rather than to the Relator.

"Thereupon the Relator prepared and signed and swore to an application in writing to purchase from the State the said tract of land in accordance with Article 5432 as amended in 1919, which application was in the form provided by law and the form approved by the Commissioner of the General Land Office, and contained the affidavit required by law duly executed by Relator, and in which application Relator applied to purchase the land for the price and under the classification which had been made and fixed by the Commissioner of the General Land Office upon the same land in pursuance of the application of Respondent, Walter Brown, to purchase the same land hereinafter referred to. Attached to the Relator's said application was his obligation duly signed by him in the form provided by law and in the form approved by the Commissioner of the General Land Office, to pay to the State of Texas 39/40 of the purchase money for said land at the said appraised price. The Relator at said time, to-wit, on March 15th, 1923, presented the said application to the Respondent, J. T. Robinson, the Commissioner of the General Land Office, and requested him to file it, and at the same time tendered to him in cash 1/40 of the purchase price for said land at the appraised price aforesaid which had been fixed by the Commissioner of the General Land Office. The said Respondent, J. T. Robison, then and there declined and refused to accept the said application or to file the same, or to accept the said purchase money so tendered, and placed his refusal upon the ground that there was pending in the Land Office an application by the Respondent Brown to purchase the same land, and then and there expressed his intention to sell and award the

said land to the Respondent, Brown, rather than to the Relator. The sole ground stated by the Respondent, J. T. Robison, for his refusal to sell and award the said land to the Relator on his said application was the pendency of the application by the Respondent Brown.''

In the meantime, while refusing to accede to any of the applications or request of Anderson, Commissioner Robison, although Brown never did comply with the regulations as to proving abandonment of the Bode tracts of land, went ahead and on February 14, 1923, classified the land as mineral and grazing, and appraised it at $5.00 per acres. At the same time, he wrote Brown of this action and offered him the chance to purchase it. On March 6, 1923, Brown made written application to purchase the land so classified. On March 8, 1923, his application was duly filed in the Land Office. It was accompanied by one-fortieth of the purchase money and proper obligations for the balance. The Commissioner acknowledged receipt of the money, but held it all up pending the settlement of the suit being threatened by Anderson. The Commissioner was ready to sell the land to Brown as he wrote him he would do. But, he held up the final consummation of the sale, pending the determination of the rights of Anderson. Neither Anderson nor Brown has finally parted with his money in this matter.

Upon the refusal of the Commissioner to sell the land to Anderson, his attorneys applied to the Supreme Court for permission to file a petition for writ of mandamus against the Commissioner and Brown, requiring the former to sell the land to Anderson. This permission was granted by our Supreme Court and the petition duly filed in that court on March 28, 1923. This occurred in about two weeks after the Commissioner refused to sell the land to Anderson.

Upon the facts aforesaid, stated in the pleadings and not denied, the relator Anderson and respondent Brown each ask that the respondent Robison be required by mandamus to sell this land to him. The Commissioner answers by general demurrer.

Before the Bodes could perfect their title, it was necessary that they comply with Articles 3944 and 3945 of the Revised Civil Statutes of 1879, reading as follows:

''Art. 3944. Whenever the field-notes of a homestead donation survey shall have been returned to the general land office, according to the provisions of the preceding article, and when proof shall be made to the satisfaction of the commisioner of the general land office that the original applicant for a homestead donation has by himself, or in case the claim has been transferred, that he and his

assignee have together in good faith resided upon, occupied and improved the land so claimed by him for a period of three consecutive years from the date of the application, it shall be the duty of said commissioner to issue a patent therefor to the original applicant or his assignee, as the case may be, upon payment of all the office and patent fees.

"Art. 3945. The proof required in the preceding article shall be by an affidavit of the claimant to the effect that such original applicant has himself, or in case the claim has been transferred, that he and his assignee have together in good faith resided upon, occupied and improved said land for three consecutive years from the date of his application for a homestead donation; which affidavit shall be corroborated by the affidavit of two disinterested and credible citizens of the county or surveyor's district in which the land is situated, which affidavits shall be subscribed and sworn to before some officer authorized to administer oaths, who shall certify to the same and to the credibility of said witnesses under his hand and the seal of his office."

That the Bodes did not comply with the requirements of the statutes anl therefore lost their rights is conceded. Upon their abandonment of the premises, the land again became vacant and unappropriated public land, subject once more to entry or location. Upon this point, Article 3948 of the Revised Statutes of 1879 reads as follows:

"Art. 3948. Should any person claiming a homestead donation fail to make the written application as provided in this chapter, or should he fail to have the survey made and to have the field-notes thereof (duly certified to and recorded) returned to and filed in the general land office within twelve months after the date of his application, or should he or his assignor fail to make satisfactory proof that he had resided upon, occupied and improved the land claimed by him for three years after the date of his application, as provided in this chapter, he shall in either event forfeit all right and title to said land and the same shall become subject to entry or location as other vacant and unappropriated public land."

As to when the Bodes could have made their proof of occupancy under these statutes, we have a most interesting decision of our Supreme Court in the case of Gallup v. Thacker, 103 Texas, 310, 126 S. W., 1120. The court, in that case, spoke through Justice Williams, who always wrote with marked ability. In that case, Thacker complied with the statutes and settled on eighty acres of land. He improved it and lived on it for more than three years. The Thacker survey was shown on the map of San Augustine County in 1873. In December, 1876, Thacker moved off the land and went

to West Texas, remaining there until 1898. While he was away, no one lived on the land. After returning to East Texas he made proof of his occupancy in 1907. In the meatime, in 1879, three years after Thacker moved off the land, S. W. Blount, Sr. took up 140 3/4 acres of land which included the Thacker eighty acres. Blount complied with all the requirements of law. The land was patented to him in 1882. Gallup had acquired the Blount title.

Under the aforesaid facts, the District Court sustained the title of Thacker to the eighty acres. On appeal, the Court of Civil Appeals certified this question to the Supreme Court: ''Do the facts stated sustain the judgment of the trial court?'' The question was answered in the negative.

Under Article 5432 of our statutes, both before and after the amendment of 1919, these homestead surveys, when abandoned, became a part of the unsurveyed public school land and subject to sale as provided in said Article. In other words, upon being abandoned, they became subject to resurvey and sale just as was done in the Thacker case. The Bode tracts reverted to the vacant and unappropriated public lands shortly after 1891.

Counsel for respondent Robison, in their brief, call attention to the Act of March 16, 1917, which relates to the granting of permits by the State to those desiring to prospect for oil and other minerals on the public lands of the State, and which Act, for the purposes of that Act, defines surveyed and unsurveyed lands. We do not construe that Act in this opinion. It is not necessary for us to do so because it has no application to the facts before us in the case at bar.

Now, as already shown, Brown began his application to purchase these Bode tracts in 1912, under Article 5432 before it was amended in 1919. If he had complied, diligently and continuously, with the requirements of the Land Commissioner, the land should have been sold to him. This record shows it doubtless would have been. On the other hand, Anderson applied for the purchase of the Bode tracts under the same Article of the statutes as amended in 1919. He has complied with all of its requirements as well as the requirements of the Land Commissioner. He is entitled to purchase the land, unless Brown has a better right than he to do so. We do not think Brown, as against the claim of Anderson, has a right to purchase this land. We shall now state our reasons for this conclusion.

When Brown filed his field notes to these surveys in the Land Office, the Commissioner was under the duty of determining whether the land in question was really vacant land. The statute reads:

"If, upon inspection of the papers, the commissioner is satisfied, from the report of the surveyor and the records of the land office, that the land is vacant and belongs to the school fund, and the survey has been made according to law, he shall approve same and notify the applicant that the land is subject to sale to him, stating the classification, price and terms, which shall be the same as that for surveyed lands, except as herein provided". Article 5432 Vernon's Sayles' Statutes of 1904.

Now the statute itself makes no provision as to how the Commissioner shall satisfy himself that the land in question does not belong to another. Under Article 5406, Vernon's Sayles' Statutes of 1914, the Commissioner prescribed a rule, in this connection, which required that one attempting to take over a homestead tract, already assigned to another, must furnish the Commissioner affidavits of more than one disinterested witness to the effect that the original homesteader was not longer residing on the land and had abandoned it. In doing this, the Commissioner but made the same requirement that the statute itself had made of a homesteader in proving up his occupancy. The rule is entirely reasonable.

Now, what was the situation, in February, 1913, when Brown's field notes were presented to Commissioner Robison? According to the *records of the Land Office,* this land had been assigned to the Bodes and was not *vacant.* So far as the Land Office records showed, the Bodes were still in possession. Therefore, as far as the records of his office went, the Commissioner would have necessarily rejected the Brown claim at that time. For, the Commissioner certainly could not have accepted the Brown application unless the Bodes had abandoned their homestead claims. So, the Commissioner did the only thing he could do, and that was to refuse to act that time on the Brown application and give him an opportunity to comply with the regulations of the office and produce the proof required to be given of the non-occupancy of the Bodes. For more than ten years, Brown did not even reply to this letter of the Commissioner. He says he went on about his business, because the evidence the Commissioner wanted was hard to find and because he did not think the Commissioner should ask for that much evidence under the circumstances. Finally, when others began to want this land, and upon the further request then made by Commissioner Robison, he sent in a second affidavit by the same witness he had used ten years before. Even this *one* affidavit was sent in many days after the twenty days finally allowed him by the Commissioner for producing the proof by the affidavits of *two* disinterested witnesses had elapsed. So, after all, Brown has never yet complied with the regulations of the Land Office, and if he be awarded the land it will be, not upon the

proof *he* furnished, but upon that furnished by *Anderson,* his adversary in claiming the right to buy the land. It seems rather strange that it could be apparently seriously contended, under the facts here present, that Brown has a better right to this land than Anderson.

Relator presents many reasons why Brown has no right to the land in suit. But, we forego a discussion of several reasons, for we think that what we shall hereafter say is conclusive.

Under the authority of the Thacker case, supra, Brown did not get a title as against subsequent applicants until he had complied with the statutes of the State, including the regulations of the Land Office made in compliance with the statutes. In other words, he had to comply with *all* requirements before he could shut off other claimants.

In the Thacker case, Justice Williams says others may be cut off by a prior claimant so long as the latter "continued in possession and continued his compliance with the law". Otherwise, later and subsequent claimants can take as against the prior one.

A most interesting case, in this connection, is that of Cox v. Robison, 103 Texas, 354, 127 S. W., 806. In that case, Cox filed his application October 27, 1906. On January 21, 1907, the Land Commissioner found the field notes incorrect and notified the parties thereof about ten days later.

On December 24, 1908, Maxey filed on the same land. His field notes were found correct, in March 3, 1909, except for being in conflict with the preceding survey by Cox.

On February 16, 1909, Cox filed corrected field notes, but that was after Maxey had filed his application. The Commissioner refused to go ahead with the sale to Cox because of the filing of the Maxey application as herein stated. Cox sought to compel the Commissioner to sell on him. Our Supreme Court refused the mandamus. Justice Brown spoke in this way:

"The tract of land in question contained less than 640 acres and was surrounded by older surveys, was not in an inclosure and had no improvements upon it. If relator's field notes had been correct he would have acquired a right to purchase the land and the Commissioner could not have lawfully refused to place a valuation upon the land and do those things necessary te enable the applicant to complete his purchase. This was a privilege granted to any applicant to purchase. Cox secured a preference to purchase by filing his application subject to the condition of the diligent prosecution of it prescribed by the statute. In order to invoke the action of the Commissioner it was necessary that the surveyor should, within the time prescribed, have returned *correct field notes* of the

survey. The law prescribes no duty to be performed by the Commissioner upon the return of incorrect field notes, but if found to be correct, then it was his duty. to value the land and give notice to the applicant so that he might complete his purchase. The Commissioner did voluntarily notify the surveyor and the applicant both of the incorrectness of the field notes, and, at any time prior to the day on which Maxey filed his application, Cox might have filed another application and procured a correct survey and return of the field notes; or he might have had the field notes corrected and returned under his former application and if accepted by the Commissioner he would have acquired title to the land.

"On the 24th day of December, 1908, the land being unappropriated and subject to purchase, Maxey initiated the statutory proceeding to acquire the land by filing his application, and a survey having been made on his application before the corrected field notes of the survey made upon Cox's application were returned to the General Land Office, Maxey acquired a right to purchase the land superior to the claim of Cox which he perfected according to the provisions of the statute. The Commissioner rightly decided under this state of facts that Maxey had the superior right to purchase the land and properly awarded it to him. The writ of mandamus is therefore refused."

As Justice Brown says, Cox had a preference right to buy the land in question "subject to the condition of the diligent prosecution of it prescribed by the statute". And, as Justice Brown says, Cox could have perfected his field notes and acquired the land at any time during almost *two* years after he knew of the defects and before Maxey began his operations. In the instant case, Brown rocked along *ten* years before others began operations.

Consequently, as Justices Williams and Brown both say, persons must diligently prosecute their claims. Otherewise, they will lose their preference rights to those who are more diligent and come along later and desire the same lands.

It is true that the Commissioner gave no time limit to Brown in *1912* as to when he must comply with his requirements. Nor did the *law,* in the Thacker case, say *when* the proof of occupancy should be filed by a homesteader. But, Judge Williams said it must be filed while the homesteader was in possession and continuing to try to acquire the land. So, under that rule laid down by Judge Williams, Brown should, *at least,* have *continued* his efforts to comply with the requirements of the Commissioner until he had succeeded or failed. He certainly could not be said to have *continued* diligently to comply with the request of the Commissioner when he dropped the matter entirely for about ten years and went on about his other

business. We do hold that, under the rulings announced by Justices Williams and Brown aforesaid, respondent Brown *abandoned* his claim under his own pleadings, and cannot now revive them against one who has diligently pursued his rights under the terms of the statutes.

Not only so, but in the instant case, the Commissioner fixed a *time limit* for Brown in *the end.* With that time limit he failed to comply. Of course, the Commissioner probably desired to be generous thereafter and he did grant further time by accepting *one* affidavit *thereafter.* But, we do not think he could change his requirements to the prejudice of the rights of another party which had intervened. In other words, even if it could possibly be said that Brown had not lost his rights during all those ten years of delay, then the Commissioner had a right to fix a time limit on him. If that was not complied with, as it was not, then Anderson's rights became fixed.

As heretofore shown, Brown has no rights of any kind in this case unless by virtue of these rules promulgated by the Land Commissioner. He steadily refused to comply with these rules. He never did do so. He never did file the affidavit of more than one person as to the non-occupancy of the Bodes. Shall he be given the benefit of the work done by another applicant for the land? There is no law or regulation of any kind, as we have already shown, that *requires* the awarding of this land to Brown; equity absolutely *forbids* it. And, even in a mandamus proceeding, equity can be given certain weight. See: Westerman v. Mimms, 111 Texas, 29, 227 S. W., 178. Anderson, alone, has shown due diligence. Under the principles laid down by Judge Brown, in the Cox case, supra, he only is entitled to this land.

Therefore, in view of what we have said, we recommend that the mandamus be granted as prayed for by the relator.

The opinion of the Commission of Appeals adopted, and judgment rendered ordering that mandamus issue as prayed for by relator Anderson, and denying the application for mandamus of the respondent Brown.

*C. M. Cureton,* Chief Justice.