# John Q. Weatherly v. D. E. Jackson et al.

No. 6255.   Decided April 18, 1934.
(71 S. W., 2d Series, 259.)

214

*Hines H. Baker,* of Houston, and *Ben H. Powell,* of Austin,. for plaintiff in error.

When plaintiff in error introduced his award from the State he made a prima facie case in his favor which entitled him to judgment unless the defendants in error proved a lack of authority in the Commissioner of the General Land Office to make the award. 50 C. J., p. 1176, sec. 620; Corrigan v. Fitzsimmons,. 97 Texas, 595; Holt v. Cave, 85 S. W., 309; Hood v. Pursley, 87 S. W., 870; Stolle v. Lilwall, 84 S. W., 689; Reeves v. Smith,. 58 S. W., 185; Stoker v. Stoker, 254 S. W., 398.

The land sold plaintiff in error belonged to the public school. fund and was subject to sale under Article 5323, R. S., 1925.. Yochum v. McCurdy, 39 S. W., 210; Post v. State, 106 Texas,. 468, 169 S. W., 407; Blaffer v. State, 31 S. W. (2d) 172; Finberg v. Gilbert, 104 Texas, 539; Taylor v. Higgins Oil & Fuel. Co., 2 S. W. (2d) 288; Holmes v. Yates, 122 Texas, 428, 61 S. W. (2d) 771.

Defendants in error had no preference right to buy the land.. Garcia v. State, 274 S. W., 319.

The State was not estopped to sell the land to plaintiff. Cox. v. Robison, 103 Texas, 354, 127 S. W., 806; Erp v. Tillman,. 103 Texas, 574; King v. Robison, 103 Texas, 390; Fitzgerald v.. Robison, 110 Texas, 468, 220 S. W., 768.

*Proctor, Vandenberge, Crain & Vandenberge,* of Victoria,. for defendants in error.

The land involved was not unappropriation public land but. had been appropriated many years prior to 1900, and was therefore not subject to sale as unsurveyed school land under Article 5323, R. S., 1925; Robertson v. Mosson, 26 Texas, 248 (199); State v. Bradford, 25 S. W. (2d) 706; Juencke v. Terrell, 98 Texas, 237.

The State was estopped from making title to the land involved adversely to defendants. R. S., 1925, Arts. 5307, 5419-20; State of Iowa v. Carr, 191 Fed., 257; State of Texas v.. Galveston City Co., 38 Texas, 22; Barrow v. Boyles, 21 S. W.. (2d) 719.

The unverified statement of Surveyor Work explanatory of his field notes, having been filed in the Land Office but having been neither authorized nor required by law, was inadmissible in evidence as an archive of the Land Office and was therefore properly excluded by the Court, and more particularly is this. true in view of the fact that the surveyor himself was present on the stand as a witness. Barrow v. Gridley, 59 S. W., 913,.

writ of error refused 94 Texas, 689; Landry v. Robison, 219 S. W., 819, 110 Texas, 295.

*James V. Allred,* Attorney General, *R. W. Yarbrough* and *Homer C. DeWolfe,* Assistants Attorney General, filed brief as amicus curiae on behalf of the State of Texas.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error sued defendants in error for the title and possession of a tract of land in Calhoun County containing 149.28 acres, and described in the petition as lying between Section 2 of F. W. Roemer Survey No. 6 on its northwest and the E. Miller survey on its southeast, claiming ownership by purchase from the State of Texas under the provisions of Article 5323 of the Revised Civil Statutes authorizing the sale of unsurveyed land belonging to the public school fund. Defendants in error claim ownership of the land as a part of the F. W. Roemer survey and the E. Miller survey, or as a part of one of said surveys.

F. W. Roemer survey was originally surveyed March 31, 1876. The E. Miller survey was originally surveyed September 16, 1880, and was patented on the original survey. Its field notes do not call for or describe any line or corner of the F. W. Roemer survey. On January 19, 1894, the F. W. Roemer Survey was resurveyed into two separate tracts, Section No. 1 containing 19.5 acres and Section No. 2 containing 344.1 acres. The field notes of the Roemer survey as resurveyed do not call for any line or corner of the E. Miller survey. The Roemer survey was patented on the corrected field notes.

Following trial without a jury, judgment was rendered in favor of defendants in error. The Court of Civil Appeals affirmed the judgment of the trial court, holding: That the mere awarding of the land in controversy to plaintiff in error did not establish the existence of a vacancy; that the evidence did not in a satisfactory manner prove that there was unappropriated land; and that the action of the Commissioner of the General Land Office in advising defendants in error's predecessor in title, who applied to purchase the same land in 1926, that there was no vacancy created estoppel precluding the subsequent awarding of the land.

Plaintiff in error in proof of the title claimed by him introduced in evidence certified copies of his application of inquiry filed in the General Land Office stating that he desired to buy the land as unsurveyed public school land, the answer of the Commissioner of the General Land Office advising that there

was doubt as to the existence of the area as public school land and authorizing a survey, the field notes prepared by a licensed State surveyor, together with a plat of the survey with the approval of said field notes by the Commissioner of the General Land Office, the formal application of plaintiff in error to purchase the land with his obligation for the payment of the balance of the purchase money after the payment of 1/40 of the appraised value, and the certificate of the Commissioner of the General Land Office awarding the land on said application to plaintiff in error, such certificate being of date August 5, 1929, and reciting that the application to purchase had been filed in the General Land Office on August 1, 1929, and that the cash payment of 1/40 of the appraised price had been made.

Plaintiff in error also introduced in evidence the certified copy of the original field notes of the E. Miller survey and certified copy of the corrected field notes of F. W. Roemer survey No. 6, together with testimony tending to prove the location on the ground of the generally accepted northwest line of Section 2 F. W. Roemer survey No. 6 and the location on the ground of the generally accepted southeast line of the E. Miller survey.

■ The first question presented is whether the record contains any evidence to sustain the finding of the Court of Civil Appeals that the land in controversy at the time it was sold by the State to plaintiff in error was not unappropriated unsurveyed land belonging to the public school fund.

The documentary evidence offered by plaintiff in error shows that in purchasing the land in controversy he took in the method provided by Article 5323 the several steps required to be taken under that law, and that the several steps so taken were sufficient to effect his purchase of the land if the land in fact was unappropriated, unsurveyed land at the time the steps were taken.

The case of Anderson v. Polk, 117 Texas, 73, 297 S. W., 219, was a suit for mandamus brought under the terms of Section 2 of Article 5323 for the purpose of determining whether the land applied for was in fact unsurveyed land belonging to the public school fund. The Commissioner of the General Land Office had advised the applicant in answer to his application of inquiry that the tract of land applied for was not vacant or unsurveyed land. The Supreme Court held that such action on the part of the Commissioner of the General Land Office raised the presumption that the area applied for was embraced within the boundaries of a valid grant, saying in connection with such

ruling that to indulge the presumption was "but to apply the familiar principle that the law presumes that a public official has rightly performed his duty."

When the Commissioner has determined, upon the filing of an application of inquiry, from the examination of the records in his office, that the area applied for belongs to the public school fund, or that there is doubt as to the existence of the area as public school land, and the applicant has caused a survey of the land to be made and the field notes returned to the General Land Office, together with a plat and the report of the surveyor giving the classification and reasonable value of the land, it becomes the Commissioner's duty to inspect the papers so returned and again to examine the records of the General Land Office and to determine whether the land belongs to the public school fund and whether the survey has been made according to law. If he finds that these things are true, he is required to approve the field notes, classify and value the land, and notify the applicant. Thereupon the applicant files his formal application and makes his first payment, and the land is awarded to him. Thus it is made the duty of the Commissioner a second time to determine whether or not the area applied for is unappropriated, unsurveyed public school land. This he must do before he approves the field notes and before he awards the land. His approval of the field notes and his award of the land to the applicant raise the presumption that he has rightly performed his duties, and that the land is unappropriated, unsurveyed public school land. If, as held in the case of Anderson v. Polk, above cited, the Commissioner's action in declining to recognize the existence of an area as public school land, following the preliminary examination of the records of his office upon the filing of an application of inquiry, raises a presumption that the area is embraced within the boundaries of a valid grant, then certainly the more formal action of the Commissioner in approving the field notes returned by the surveyor and in awarding the land to the applicant following the inspection of the field notes and plat and the second examination of the records in the Land Office, raises a prima facie presumption that the area applied for is unappropriated, unsurveyed public school land.

It is well settled by the authorities that proof of an award of public school land by the Commissioner of the General Land Office creates a prima facie presumption of the existence of the facts necessary to authorize the Commissioner to make the award.

In Gulf Production Co. v. State, 231 S. W., 124 (applica-

tion for writ of error refused), the State contended that a sale of public school land was void because the land was sold at $1.50 per acre when it had been appraised at $2.00 per acre. The application was made to purchase the land at $1.50 per acre, and on this application the land was awarded. The Court reversed and rendered the judgment of the trial court, holding that the act of the Commissioner of the General Land Office in awarding the land on such application created the definite presumption that the land had theretofore been appraised at $1.50 per acre and the county clerk notified of such appraisal, and that the evidence offered by the State was insufficient to overcome the presumption, and saying: "And while appellees in attacking the validity of the sale and award had the right to rebut that presumption, the burden of proof was upon them to do so and by direct and affirmative evidence."

See also Corrigan v. Fitzsimmons, 97 Texas, 595, 80 S. W., 989; Smithers v. Lowrance, 100 Texas, 77, 93 S. W., 1064; Clements v. Robison, 111 Texas, 449, 239 S. W., 902; Holt v. Cave, 85 S. W., 309 (application for writ of error refused); Hood v. Pursley, 87 S. W., 870.

It is our opinion that plaintiff in error, by the evidence introduced by him, particularly that showing the approval of the field notes and the awarding of the land, proved prima facie that the land in controversy, at the time he purchased it from the State, was unappropriated, unsurveyed school land.

The next inquiry is whether the evidence introduced by defendants in error rebuts the prima facie presumption so raised.

The evidence relied upon by defendants in error to prove that the land in controversy was not unsurveyed school land at the time of its sale to plaintiff in error is: First, the official Land Office maps compiled in 1882 and in 1919 on both of which the southeast line of the Roemer survey is shown to coincide with the northwest line of the Miller survey; second, the fact that the Roemer survey was resurveyed in two sections with the approval of the field notes and the issuance of patent thereon, from which it is argued that Section 2 of that survey must have included all of the area to the nortwest line of the Miller survey, because a law enacted in 1854 and in effect at the time of such resurvey (Art. 4149, R. S., 1895) permitted two or more surveys to be made under a land certificate, but provided that when they were so made the land should be bounded by prior surveys; third, long continued and unmolested possession of the land by defendants in error and their predecessors in title. It is contended also that by reason of such

possession and claim the land was not unappropriated, and therefore did not pass to the public school fund under the act approved February 23, 1900 (Art. 5416, R. S., 1925), and further that on account of such possession and claim the land was titled or equitably owned under color of title from the sovereignty of the State within the meaning of Section 2 of Article 14 of the Constitution, and was not subject to sale under Article 5323.

As to the official maps in the General Land Office, they represent nothing more than the draftsman's and the Commissioner's opinions and conclusions from the records and other available information as to the location of the various surveys with reference the one to the other. As additional information about the facts on the ground is obtained, as for example, from new field notes or reports of surveyors or judgments, the maps are corrected and changed, and from time to time it becomes necessary to compile new maps. It is held in Holmes v. Yates, 122 Texas, 428, 61 S. W. (2d) 771, that the Commissioner has the authority to correct mistakes in the records of the General Land Office on proper showings. So the conclusion or opinion of the Commissioner that the Roemer and Miller surveys adjoined as expressed by the maps of 1882 and 1919 was supersedes by the Commissioner's later opinion and conclusion expressed by his action in approving the field notes of plaintiff in error's survey and awarding the land to him. Such maps previously made from the information available when they were made, although they may under proper circumstances be admissible, cannot constitute evidence to rebut the presumption arising from the later action of the Commissioner in approving the survey and making the award.

The conclusion last stated is supported by Finberg v. Gilbert, 104 Texas, 539, 141 S. W., 82. There it was held that a judgment in favor of the defendant in error, upon whom rested the burden of proving that the land in controversy was within the bounds of a survey owned by him, was not supported by proof that official maps of the General Land Office so delineated the survey as to include the land within its bounds. It was further held that such official maps were admissible only for whatever they might be worth as throwing light on or as corroborative of the location of the land in suit as originally fixed in connection with the evidence as to the actual location. Justice Ramsey said in the opinion: "To sustain a judgment based on such testimony might indeed sanction the doctrine denounced by the Supreme Court of California in Payne v. English, 79 Calif., 540, 21 Pac., 952, of permitting a man who

owned land to be 'afterwards mapped out of it by other persons.'" The State may not be "mapped out" of land owned by it even though the map may be made in the State's General Land Office. State v. Post, 106 Texas, 468, 169 S. W., 407, 169 S. W., 401.

■ The second position taken by defendant in error to support the finding of the Court of Civil Appeals on the issue of boundary is that, on account of the act of 1854 above referred to, requiring in effect that two or more surveys made under one certificate must be bounded by prior surveys, it is to be assumed that the resurvey of the Roemer was so made as to include whatever unappropriated land there was as far southeast as the northwest line of the Miller survey.

It is very doubtful whether the statute (Art. 4149, R. S., 1895) has any application to a resurvey. By its terms it has to do with locations under certificates. Defendant in error seems to make no contention that the Roemer survey as originally made extended as far southeast as the northwest line of the Miller survey as thereafter located. The corrected field notes of the Roemer evidencing the resurvey show by their recitals, as well as by the sketch which accompanies them, that the southeast line of Section 2 of the resurvey is not farther southeast than the southeast line of the original Roemer survey, but that to the extent of its length it coincides with the southeast line of the original survey.

It is not to be assumed that the corrected survey included any land not included within the original survey, for if it had it would have been to that extent unauthorized. State v. Post, 106 Texas, 468, 169 S. W., 407, 169 S. W., 401; Turner v. Smith, 122 Texas, 338, 61 S. W. (2d) 792, 801.

Furthermore, it cannot be assumed that by reason of the act of 1854 the resurvey of the Roemer included the land in controversy, because the land which is segregated from the public doman by a survey is the land which is surveyed and which is described in the field notes, and is not the land which ought to have been surveyed. In Forbes v. Withers, 71 Texas, 302, 9 S. W., 154, it is said that: "The inquiry as to what lands are granted by the patent is directed to the survey as actually made and not as it should have been made by the surveyor." See, also, New York & Texas Land Co. v. Thomson, 83 Texas, 169, 17 S. W. 920; Miller v. Yates, 122 Texas, 435, 61 S. W. (2d) 767, 770; State v. Talkington, 274 S. W., 314, 316.

■ The field notes returned by the surveyor constitute the defi-

nite description of the land surveyed and afford the means of determining with certainty what land passes by the grant.

The same principle is present in the settled doctrine that the purpose of the surveyor as to what land is included in his survey (and consequently the intention of the parties to the subsequent grant) is to be deduced, not from the intention which exists only in the mind of the surveyor, but from what he did in making the survey and from the description of the land as contained in his field notes. Blackwell v. Coleman County, 94 Texas, 216, 59 S. W., 530; Finberg v. Gilbert, 104 Texas, 539, 141 S. W., 82; Turner v. Smith, 122 Texas, 338, 61 S. W. (2d) 792.

■ Title cannot be acquired by adverse possession of land belonging to the State, and such possession is not evidence that the land possessed is not the property of the State. Similarly, long recognition by owners of adjacent surveys of certain lines as fixing the boundaries of the surveys cannot in any way affect public domain or appropriate any portion of it. Ratliff v. Burleson, 25 S. W., 983, 984; State v. Talkington, 274 S. W., 314, 316.

■ As to the contention that on account of the adverse possession and claim the land in controversy was titled or equitably owned within the meaning of Section 2 of Article 14 of the Constitution, and therefore was not subject to sale to plaintiff in error, it has long been held that land not within the bounds of a survey, but which is possessed and claimed as a part of such survey, is neither titled nor equitably owned by the claimant within the meaning of this section of the Constitution, and that it is subject to location or sale notwithstanding such adverse possession and claim. Paston v. Blanks, 77 Texas, 330, 14 S. W., 67; Maddox Bros. & Anderson v. Fenner, 79 Texas, 279, 290, 15 S. W., 237; Yochum v. McCurdy, 39 S. W., 210; Blaffer v. State, 31 S. W. (2d) 172, 190.

Juencke v. Terrell, 98 Texas, 237, 82 S. W., 1025, and the several decisions following it, including State v. Bradford, 121 Texas, 515, 550, 50 S. W. (2d) 1065, are not in conflict with the cases last cited, for in the Juencke and Bradford and other similar cases the lands sought to be purchased were actually within the bounds of patented or titled surveys, and the attempting purchasers contended that the lands were subject to purchase because of asserted invalidity of the patents or titles.

The Juencke case holds that Section 2 of Article 14 of the Constitution does not prohibit the Legislature from providing for the sale of land titled or equitably owned under color of

title, merely evinces the policy of the State not to encourage litigation by permitting acquisition of such land, and that it should not be assumed that the Legislature intended to depart from that policy. There was nothing in the law under which the application to purchase was made in the Juencke case expressly or impliedly authorizing the Commissioner to sell land adversely claimed; and the court found, in a section of the same law making it the duty of the Attorney General to file suit for land occupied or claimed adversely to the State, a declaration of legislative policy that the State should establish its ownership of such land by suit before putting it upon the market. The fourth section of Article 5323 differs in this respect from the statute construed in the Juencke case, in that it permits the Commissioner, when it appears that unsurveyed land is adversely claimed, at his discretion, either to refer the claim to the Attorney General for removal by suit before the sale is made, or to sell the land without the institution of such suit.

It follows that even if the Juencke case were construed as holding that mere adverse possession and claim prevented the making of sales of unsurveyed school land, it would not on that point apply to sales made under Article 5323.

The act of February 23, 1900 (Art. 5416, R. S., 1925), granted to the public school fund "all of the unappropriated public domain remaining in the State of whatever character and wheresoever located, including any lands hereafter recovered by the State," with certain named exceptions. Land adversely possessed was not excepted. The intention was that all the public land not then disposed of should thereafter belong to the school fund. The word "unappropriated" as used in this act of the Legislature was certainly intended to have at least as broad and inclusive a meaning as the same word used in Section 2 of Article 14 of the Constitution. Adverse possession of a part of the public domain could not serve to defeat the purpose of this act of the Legislature, or to destroy the right of the school fund to the land.

We hold that land which in fact is not included within the bounds of any survey is unappropriated public domain both within the meaning of Section 2 of Article 14 of the Constitution and within the meaning of the act of February 23, 1900, notwithstanding the fact that it may have been possessed and claimed by the owner of an adjoining survey during a long period beginning prior to February 23, 1900. We conclude that there is in the record no evidence of probative value to overcome the presumption, arising from the approval of the field

notes and the awarding of the land, that the land in controversy was unsurveyed public school land when sold.

■ The Court of Civil Appeals states in its opinion that the Commissioner, in the year 1926, represented to defendants in error's predecessor in title, Thomas, who filed an application of inquiry for the same land under Article 5323, that there was no vacancy, and refused to award the land to him; and holds that such action on the part of the Commissioner constituted an estoppel against the State preventing it thereafter from asserting its ownership of the land and selling it to plaintiff in error. This ruling is based upon an erroneous interpretation of the record, for the undisputed evidence is that in answering the application of inquiry filed by Thomas the Commissioner advised him that the vacancy was doubtful and referred him to the county surveyor or any licensed land surveyor for the making of a survey. This answer was given in accordance with Section 1 of Article 5323, and it afforded Thomas the opportunity to complete the purchase by causing a survey to be made and taking the other prescribed steps. He did not employ a surveyor and did not follow up the application. He therefore lost the inchoate right acquired by filing the application of inquiry. Cox v. Robison, 103 Texas, 354, 127 S. W., 806; Anderson v. Robison, 114 Texas, 249, 267 S. W., 456. The advice given Thomas by the Commissioner could not have misled anyone and could not form a basis for estoppel.

■ But even if the Commissioner had advised Thomas that the land was not vacant, such action would not have estopped the State from asserting thereafter its ownership of the land. It has many times been held that public school land, by reason of Section 4 of Article 7 of the Constitution, must be sold and may be disposed of only by sale. Ketner v. Rogan, 95 Texas, 559, 68 S. W., 774; Pruett v. Robison, 108 Texas, 283, 192 S. W., 537; Theisen v. Robison, 117 Texas, 489, 502, 8 S. W. (2d) 646; Greene v. Robison, 117 Texas, 516, 8 S. W. (2d) 655. Public school land belonging to the State cannot be disposed of by the action of the Commissioner in approving field notes of a resurvey made by a state surveyor in such way as to include land not covered by the original survey. State v. Post, 106 Texas, 468, 169 S. W., 407, 169 S. W., 401.

■ The answer of the Commissioner to a letter of inquiry is and is intended to be but preliminary or tentative. It is based upon such information as then may be found in the Land Office and the facts are intended to be more fully developed by a

survey if the answer is favorable, and by a suit if the answer is unfavorable. The tentative opinion expressed following the preliminary investigation may often be a mistaken opinion. Such mistakes on the part of its officials do not and should not estop the State or deprive it of its property. Jones v. Robison, 104 Texas, 70, 133 S. W., 879; Grayburg Oil Co. v. State, 50 S. W. (2d) 355 (application for writ of error refused); Jeems Bayou Club v. United States, 260 U. S., 561, 67 L. Ed., 402; United States v. St. Anthony R. Co., 192 U. S., 524, 542, 48 L. Ed., 548, 555.

Defendants in error urge as additional grounds of estoppel the official maps in the Land Office, the adverse possession of the land with payment of taxes, and the failure of the Commissioners of the General Land Office, the Attorneys General and the Governors during the period of such possession to question the claim of defendants in error by instituting or causing to be instituted suit for the recovery of the land. On the authorities last above cited and for the reasons which have been set out in discussing the ruling of the Court of Civil Appeals on the question of estoppel and in passing upon the admissibility and probative value of the Land Office maps, these are not sufficient, singly or collectively, either to estop the State or to divest it of title. To the authorities may be added the rule that the failure of public officers to perform their duties will not work an estoppel against the State. 10 R. C. L., p. 705. This reference is not intended as a criticism of the public officials mentioned, for the State has made few, and no adequate appropriations which could be used to discover or prove the existence of unsurveyed school land adversely possessed.

■ The claim of defendants in error to a preference right to purchase the land in controversy under Section 8 of Chapter 163, Acts Regular Session, 36th Legislature, cannot be sustained. The Court of Civil Appeals, in Garcia v. State, 274 S. W., 319, 322, correctly construed that statute as having application only to land included within the bounds of a survey and which for some reason could not lawfully be patented. If the land is within the bounds of one or both of the surveys in which defendants in error own land, it belongs to them and is already patented. If it is outside of those surveys, it is unsurveyed land which is not affected by the statute giving the preference right.

■ Defendants in error contend that although Article 5323 has been held to be constitutional and valid by recent decisions

(Camp v. Gulf Production Co., 122 Texas, 383, 61 S. W. (2d) 773, 780; Barrow v. Boyles, 122 Texas, 416, 61 S. W. (2d) 783; Cockrell v. Work, 122 Texas, 406, 61 S. W. (2d) 787; Turner v. Smith, 122 Texas, 338, 61 S. W. (2d) 792), it is nevertheless unconstitutional in its application and effect in this particular case. It is argued that because the Commissioner determined that the land belonged to the State and awarded it without giving defendants in error an opportunity to be heard, and that because their rights are forever concluded by the award, defendants in error have been deprived of their property without due process of law, and further that the Commissioner in determining that the land belonged to the State assumed power which belongs to the judiciary.

While it is true that it does not appear from the opinions in the several decisions last cited that the constitutionality of Article 5323 was questioned upon the particular grounds herein urged, the entire article was discussed in the opinion in the case of Camp v. Gulf Production Company, above, including the section authorizing the Commissioner to determine that a vacancy exists in the absence of a judicial determination of the question, and after such discussion, Judge Critz, who wrote the opinion, said: "It is evidence from what we have said that the entire act is constitutional and valid." Thus it appears that the Court intended to sustain the law as a whole.

The award, as hereinabove has been stated, is not conclusive of the rights of defendants in error. It created merely a prima facie presumption which may be rebutted by proof that the land when awarded was not unsurveyed school land, that is, by proof that it was, as defendants in error assert, within the bounds of the Roemer and Miller surveys, or within the bounds of one of said surveys. A law which gives to the act of a public official the effect of raising a prima facie presumption and does not deprive the party affected of the right to rebut the presumption is not in denial of due process. Prideaux v. Roark (Com. App.), 291 S. W., 868; Clem v. Evans (Com. App.), 291 S. W., 871, 51 A. L. R., 1135; Withers v. Crenshaw, 155 S. W., 1189; Newton v. State, 98 Texas Crim. App., 582, 267 S. W., 272; Reitler v. Harris, 223 U. S., 437, 56 L. Ed., 497; Hawkins v. Bleakly, 243 U. S., 210, 61 L. Ed., 678; Hawes v. Georgia, 258 U. S., 1, 66 L. Ed., 431; Minneapolis & St. L. R. R. Co. v. Minn., 193 U. S., 53, 48 L. Ed., 614; extended note, 51 A. L. R., 1139, and following.

■ In determining that land applied for was unsurveyed school land and therefore subject to sale under the terms of Article

5323 and in selling it under that law, the Commission was not exercising or attempting to exercise judicial power. He was but acting as an administrative officer in the execution of the law authorizing the sale of the land. Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas, 379, 389, 100 S. W., 138; Middleton v. Texas Power & Light Co., 108 Texas, 96, 110, 185 S. W., 556; Motl v. Boyd, 116 Texas, 82, 126, 286 S. W., 458; Arnold v. State, 71 Texas, 239, 9 S. W., 120.

■ Defendants in error contend that the award to plaintiff in error was fraudulently procured and therefore void, and that the State and the acting Commissioner of the Land Office acted unfairly in making the award. Sales of public school land are not subject to be attacked by adverse claimants for fraud or collusion or on account of erroneous classification or appraisement. Logan v. Curry, 95 Texas, 664, 69 S. W., 129; Dunn v. Wing, 103 Texas, 393, 128 S. W., 108; Harper v. Terrell, 96 Texas, 479, 73 S. W., 949; Smithers v. Lowrance, 100 Texas, 77, 93 S. W., 1064; Hamilton v. Votaw, 73 S. W., 1091 (application for writ of error refused).

However, after carefully examining the record, we find that there is no evidence of fraud in the procurement or of unfairness in the making of the award. The several steps by which the survey, the sale and the award were made were taken in the manner prescribed by the statute, and duly became matters of public record without any suggestion of secrecy or partiality. The field notes prepared by a licensed state surveyor were approved only after careful and deliberate examination and consideration. No evidence whatever was offered to contradict or challenge the correctness of the field notes. The award was made after the acting Commissioner, from thorough inspection of the field notes, the surveyor's report, the records in the Land Office, and all available information, had become satisfied that the land belonged to the public school fund, and that the survey had been made according to law. The acting Commissioner, who made the award, performed his duties fairly, faithfully and impartially.

■ Plaintiff in error offered in evidence a certified copy of a written report made by the surveyor who made the survey for plaintiff in error, which report was in explanation of the survey and field notes and was filed in the General Land Office at the same time the field notes were filed. Defendants in error objected to this evidence because it was hearsay, because it formed no part of the field notes or plat or sworn classification and valuation required of the surveyor, because it was ex

parte and unverified, because it represented conclusions of the surveyor upon the very issue involved in the case, and because the effect of the admission of the report would be to deprive defendants in error of the right to cross examine the surveyor. The trial court sustained the objections and excluded the report. The surveyor was present and testified briefly on the trial.

On this question, we are directed by the Court to say that it holds that the objection should have been overruled and the report admitted in evidence, because it was an official report made in connection with and in explanation of the survey and field notes and because it was permitted and authorized to be filed in the General Land Office. Defendants in error, of course, would be permitted to offer evidence in rebuttal of the facts stated in the report.

Defendants in error pleaded improvements in good faith, consisting of breaking the land and putting it in cultivation, which was done prior to the time plaintiff in error purchased the land from the State. Plaintiff in error contends that a claim for such improvements cannot be asserted against a purchaser from the State because the State could not be required to make compensation for them, citing Swetman v. Sanders, 85 Texas, 294, 20 S. W., 124; Finks v. Cox, 30 S. W., 512; and Hamman v. Presswood, 120 S. W., 1052, the opinions in which cases contain expressions sustaining the contention. It is our opinion, however, on the authority of Williams v. Finley, 99 Texas, 468, 472, 90 S. W., 1087, and for the reasons given in the opinion in that case, that a claim for the value of permanent improvements ,even though they were placed on land while it belonged to the State, and even though there is no legislative authority for compensation from the State, may be maintained against one who has purchased the land from the State, when it is shown that the improvements are permanent, that they were made during adverse possession in good faith for at least a year before the commencement of the suit, that they enhanced the value of the land, and that the purchaser from the State obtained in his purchase the benefit of such enhanced value, that is, that the value of the improvements was not added to the value of the land when it was appraised for the sale.

While the presumption arising from the approval of the survey and the award and the absence of evidence to rebut the presumption would warrant the rendition of judgment here in favor of plaintiff in error for the title and possession of the land, the case will be remanded for trial in order to give the

parties the opportunity to develop it fully, particularly to offer evidence as to the facts on the ground.

The judgment of the Court of Civil Appeals and that of the trial court are reversed and the cause remanded.

Opinion adopted by Supreme Court, April 18, 1934.