## I. G. FELLERS v. J. W. McFATTER.

Decided May 8, 1907.

**1.—Trespass to Try Title—School Land—Contemporaneous Applications.**

In a suit of trespass to try title to public school land the rule that the plaintiff in such suit must recover on the strength of his own title, applies; and where it appeared in such suit that the plaintiff and defendant filed their applications to purchase the land in controversy with the county clerk of the proper county at the same instant of time, the plaintiff failing to show a better right to the land was not entitled to recover. The fact of prior possession is of no avail in such case.

**2.—Improvements in Good Faith.**

In order to constitute a person a possessor of land in good faith he must not only believe that he is the true owner, but he must be ignorant that his title is contested by any one claiming a better title. The value of improvements made after suit filed can not be recovered.

**3.—Public School Land—Act Construed.**

Under the law of 1901 (Acts of 1901, p. 292), the public school land is awarded to the first applicant who is able to make the affidavit as to actual settlement, and comply with the other requirements of the law; and the fact that some other person may have preceded him in settling thereon will not deprive him of the right thus guaranteed.

**4.—Home Section—Additional Land.**

The right to additional land, under the statute, is dependent on the right to the home section, and one failing to show title to the home section can not hold additional land.

ON REHEARING.

**5.—Same.**

The law places every qualified purchaser of public school land on the same footing, and while it requires of the homeseeker that he shall actually occupy the land he desires for a home it does not give him any advantage over the man who may desire the land as an addition to his home section, as to both of them the application fixes the right.

**6.—Contemporaneous Applications—Effect.**

It seems that applications to purchase public land made at the same time by different parties would nullify each other and a subsequent application would secure the land.

Appeal from the District Court of Edwards County. Tried below before Hon. R. H. Burney.

*W. D. Love* and *George Powell,* for appellant.—On November 23, 1904, at 8 o'clock a. m., appellant filed with the county clerk of Edwards County his application to purchase section 920, which application was accompanied by his affidavit that he desired to purchase same as a home, and that he in good faith had actually settled thereon, and by his obligation for 39-40 of the purchase money in due form, and having paid 1-40 of the purchase price of said land, acquired a prior right and equity therein, which entitled him to appropriate, and whereby he did appropriate said land to the exclusion of appellee, and should have been awarded the same. Rev. Stats., art. 4218j; Hobert v. Wilson, 31 S. W. Rep., 710; Borchers v. Mead, 17 Texas Civ. App., 35; Hitson v. Glascock, 2 Texas Civ. App., 618.

Appellant, by his actual settlement upon an application to purchase section 920, under the law became entitled to purchase additional lands, and having filed his application to purchase section 912 as additional lands seven minutes prior to appellee's application, was entitled to have said section awarded to him. Borchers v. Mead, 17 Texas Civ. App., 35; Wilgus v. Arnold, 29 S. W. Rep., 823; Metzler v. Johnson, 1 Texas Civ. App., 139.

*G. B. Fenley,* for appellee.—Occupancy of State school land prior to the date of an application by an applicant, gives him no prior right therein either legal or equitable. And prior possession of State school land does not support any grade of title. Collyns v. Cain, 9 Texas Civ. App., 198; Hobert v. Wilson, 31 S. W. Rep., 710.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to two sections of land, instituted by appellant against appellee and Jesse Billings. The latter disclaimed and was dismissed from the suit. A verdict was instructed for appellee and appellant has perfected this appeal from the judgment rendered on that verdict in favor of appellee.

The agreed statement of the facts is as follows: "1st. It is agreed and admitted that the two sections of school land in controversy, to wit: School section No. 920, and 912 in the name of the G. C. & S. F. Ry. Co., survey No. 920 lying partly in Edwards and partly in Uvalde County, Texas, and survey No. 912 lying in Edwards County as described in the pleadings in this case, had been duly appraised and classified by the Commissioner of the General Land Office as required by law, prior to the dates of all applications to purchase made by both the plaintiff and the defendant.

"2d. That the said section No. 920, lying partly in Edwards and partly in Uvalde County, had been duly classified and appraised by the Commissioner of the General Land Office as aforesaid, and the Commissioner of the General Land Office had notified the county clerk of Uvalde County of such classification and appraisement and the said section was subject to sale in the county of Uvalde.

"3d. That the county clerk of Edwards County had been legally notified by the Commissioner of the General Land Office of the

classification and appraisement of said land and that the same was on the market subject to sale in said Edwards County.

"4th. That I. G. Fellers, the plaintiff, did on the 23d day of November, 1904, at 8 o'clock a. m., file with the county clerk of Edwards County, his application to purchase said section No. 920, which application was accompanied by his affidavit that he desired to purchase the same as a home and that he had actually settled thereon, in good faith, and by his obligation for 39-40 of the purchase money, all in due form of law.

"5th. That the said affidavit was true that the said I. G. Fellers had actually settled thereon in good faith and has continuously resided thereon ever since.

"6th. That at the time the said I. G. Fellers filed with the said clerk his application to purchase the said section No. 912, which lies within a radius of five miles of section No. 920, his said home tract, as additional to his home tract, accompanied by his affidavit that he was buying the same as additional to his home tract, and that his home was upon section No. 920, and that he was a bona fide settler on the same; also his obligation for 39-40 of the purchase price thereof, all in due form, which affidavit was true, and he has continued to reside upon his said home tract in good faith since said date.

"7th. That the said I. G. Fellers, at the same time he filed his applications as aforesaid, paid to the county clerk of Edwards County 1-40 of the purchase price of each of the said sections, which the said clerk forwarded to the State Treasurer of the State of Texas, which was duly received by the said treasurer.

"8th. That the said clerk forwarded the said applications, affidavits and obligations to the Commissioner of the General Land Office, which were duly received and filed, by him, but were rejected by him, because the defendant, J. W. McFatter, had applied to purchase the said land on the same date, and at the same hour.

"9th. It is also agreed that the defendant, J. W. McFatter, was, on the 23d day of November, 1904, and long prior thereto, the owner of section No. 219, originally granted to J. C. Kuhn, and lying in Uvalde and Edwards Counties and that he was a bona fide settler on said date and had been long prior thereto, and has ever since said date, been the owner of, and made his home thereon in good faith; and the said land in controversy, to wit: the said school sections Nos. 920 and 912 as described in the pleadings, were both situated within a radius of five miles of defendant's said home tract.

"10th. That on the said 23d day of November, 1904, at 8 o'clock a. m., the defendant filed his application to purchase the said survey, No. 920 as additional land to his said home tract with the county clerk of Uvalde County; and that the said application was accompanied by his affidavit that he was the owner of survey No. 219, in the name of J. C. Kuhn, and that he was a bona fide settler on the same, all in due form of law, and all of which allegations were true; and also his obligation to the State of Texas for 39-40 of the purchase price of said land, and at the time paid to said clerk 1-40 of the

purchase price thereof; that the said clerk forwarded the said application affidavit and obligation to the Commissioner of the General Land Office, which was duly filed by him, and at the same time forwarded the said 1-40 of the purchase money to the State Treasurer of the State of Texas, which was duly received by him; that the Commissioner of the General Land Office rejected the said application for the reason that an application to purchase the same had been filed at the same time by the plaintiff, I. G. Fellers.

"11th. That on the said 23d day of November, 1904, at 8:07 o'clock a. m., the defendant filed his application to purchase the said survey No. 912 as additional land to his said home tract with the county clerk of Edwards County; that the said application was accompanied by his affidavit that he was the owner of survey No. 219, in the name of J. C. Kuhn, and that he was a bona fide settler on the same, in due form of law, all of which allegations were true; and also his obligation to the State of Texas for 39-40 of the purchase price of said land, and at the same time paid to said clerk 1-40 of the purchase price thereof; that the said clerk forwarded the said application, affidavit, and obligation to the Commissioner of the General Land Office which were duly filed by him, and at the same time, forwarded the said 1-40 of the purchase money to the State Treasurer of the State of Texas, which was duly received by him; that the Commissioner of the General Land Office, rejected the said application for the reason that an application to purchase the same had been filed at the same. time by the plaintiff.

"12th. It is agreed that the defendant, J. W. McFatter is the owner of the said survey No. 219, and was at all the dates mentioned herein; that both the plaintiff and the defendant fully complied with the law in their applications; that all payments due upon the said school sections have been duly and legally made by all parties.

"13th. That neither plaintiff nor defendant, prior to November 23, 1904, had purchased from the State his complement of school land, and each was entitled, under the law, to purchase as many as two sections of school land."

In addition appellant testified as follows: "My name is I. G. Fellers. I live on section No. 920, G. C. & S. F. Ry. Co., survey in the southern portion of Edwards County. I am the plaintiff in this case. I have lived on said section of land since the 22d day of November, 1904, at which time I moved on said section, and on the 23d day of said November made my application to purchase the same; also at the same time made my application to purchase section 912, as additional land."

The burden was upon appellant to establish a title to the land superior to that of appellee, and in order to do that it devolved upon him to show a strict compliance with the law and an application to purchase made prior to that of appellee. Appellant in this suit must, as in every action of trespass to try title, recover upon the strength of his title and not on the weakness, or complete absence, of title on the part of appellee. Gracey v. Hendrix, 93 Texas, 26; Willoughby v. Townsend, 93 Texas, 80.

The law of 1901 (page 292, Acts of the Legislature) provides: "All applications shall take effect from the time they are filed in the office of the county clerk of the proper county," and this language is a complete answer to the contention of appellant that the application to purchase on the part of appellant would date back to the time that he went into possession of the section claimed as a home section. The possession of the land did not give title to appellant, it was merely a necessary step, preliminary to filing the application to purchase. Such possession of State land would give no right to the possessor to recover of a naked trespasser as would be the case in ordinary actions of trespass to try title, but in order to establish his right to the land it devolved upon him to show not only possession but an application to purchase prior in time to that of any other legal applicant. Collyns v. Cain, 9 Texas Civ. App., 198; Hobert v. Wilson (Texas Civ. App.), 31 S. W. Rep., 710.

In the last case cited it was said: "The law awards the land to the first applicant who is able to make affidavit to actual settlement, and comply with other requirements of the statute; and the fact that some other person may have preceded him in settling thereon, will not deprive him of the right thus guaranteed." We have seen no case that is in conflict with the language quoted and deem it to be a correct construction of the law, and it follows that it is the application and not the possession that fixes title in the purchaser of public school land.

The court did not err in sustaining the exceptions to the supplemental petition which set up that appellant had made improvements in good faith. The pleadings show that the improvements must have been made after appellant's application to purchase had been rejected by the Land Commissioner and he could not under his own pleadings have made the improvements in good faith. He knew that his application had been filed at the same time as that of appellee and that he had no right in the land. In the supplemental petition he recognizes that appellee's claim to the land was of equal validity with his and he could not claim that he made the improvements in good faith. The evidence showed that the land belonged to neither appellant nor appellee, but to the State of Texas, and it does not appear upon what principle of law or equity appellant should recover the value of improvements from appellee. Swetman v. Sanders, 85 Texas, 294; Finks v. Cox, 30 S. W. Rep., 512.

In order to constitute a person a possessor of land in good faith, he must not only believe that he is the true owner, but he must be ignorant of the fact that his title is contested by anyone claiming a better title. Dorn v. Dunham, 24 Texas, 380; Parrish v. Jackson, 69 Texas, 614. The allegations in appellant's pleading show that appellant knew that he had no title to the land, and consequently could not be a possessor in good faith.

It does not matter that appellant may have filed his application for the second section before appellee filed his, because appellant's right to the second section depended on his right to the first or home section and went down with that.

Appellant must have made the improvements after he had instituted suit and consequently he could not have acted in good faith. Henderson v. Ownby, 56 Texas, 647. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is in effect admitted by appellant that his application to purchase the land was not filed prior to the time that the application to purchase made by appellee was filed, but, if we rightly apprehend his position, it is that being an actual occupant he had acquired a right in the land that could not be defeated by the filing of an application by one who desired the land as additional to his home section. In other words, the contention is that the actual occupant or settler on the land, who desires it for a home, is given a right to the land that can not be defeated by a prior application by any one, unless it be another actual settler on the land, and the case of Hobert v. Wilson (Texas Civ. App.), 31 S. W. Rep., 710, is cited as supporting that contention. We do not think that the language in that case tends to support the contention, but on the other hand it appears that it is directly opposed to it. The contest in that case was between two settlers on the land, one settling on it several months prior to the other, the later occupant, however, getting his application to purchase filed before the other. The court said: "The law awards the land to the first applicant who is able to make affidavit to actual settlement, and comply with the other requirements of the statute; and the fact that some other person may have preceded him in settling thereon, but not in making application to purchase, will not deprive him of the right thus guaranteed. A different ruling would have the effect to enable one, by making actual entry upon school land, to deprive the State of the right to sell for an indefinite time—a reasonable time to make up his mind whether he desired to purchase or not. In this position the State has seen proper not to place itself. We think it follows from this that one, by taking actual possession of the State's land, can not deprive all others of the right to settle thereon in such manner as will enable them to accept the proposition to purchase made by the statute." It is true that actual occupancy is made the ground of right to purchase, but that was the case presented and to that class of case the decision as to actual occupancy must be confined. The decision is clear on the point that occupancy does not give the occupant any advantage over any one who has the right to purchase under the statute.

The makers of the law might, as to the sale of public lands, have inserted a clause that when a person has actually settled on public land with a view to purchasing the same, the land should not be open to purchase by any one desiring it as an addition to his home section, but that clause has not been inserted and this court does not feel that it has the authority to read it into the statute. We conceive that the law places every qualified purchaser of State

land on the same footing, and while it requires of the homeseeker that he shall actually occupy the land he desires for a home, it does not give him any advantage over the man who may desire the land as an addition to his home section. As to both of them the application fixes the title. It is true that by the law of 1901, the purchase of additional land is not provided for in terms, but the act refers to all purchasers and expressly recognizes other modes of purchasing school lands than by actual occupancy, by excepting the others from the requirement to make affidavit that the purchaser desires the land for a home and has settled on it in good faith. In order to find out the cases "otherwise provided by law," of course recourse must be had to other statutes which name the class of persons who may purchase school lands. The provisions in regard to applications to purchase refer to all purchasers under the law, and when it is said "all applications shall take effect from the time they are filed in the office of the county clerk of the proper county," it meant all applications, and not merely all applications filed by actual settlers.

It may be and doubtless is the desire of the State to encourage those who desire to settle on and purchase school lands, but in doing so it has not seen proper to make actual occupancy a withdrawal of the land from sale, and confer on the actual occupant the right to keep off all purchasers, and at his leisure make application to purchase. If actual settlement with an intent to purchase could be held to prevent any one else, qualified under the law to purchase, from purchasing for one hour or one day it might just as well keep him from purchasing for one week or month or year, and thus tie up the public lands and prevent the State from realizing thereon. The Legislature had not seen proper to extend this privilege to the actual settler and courts have no authority to do it. We have found no authority in decision or statute that sustains appellant's proposition that, "actual possession of the settler suspends the right to receive the application of a third party against the actual settler," and appellant fails to point out any such authority.

The case of Collyns v. Cain, 9 Texas Civ. App., 193, was fully approved by the Supreme Court in an opinion on application for writ of error (87 Texas, 612), and in that case it is held, that while the general rule is that prior possession is sufficient to enable a plaintiff to recover of a mere trespasser in an action of trespass to try title that the rule does not apply to the public domain the title to which is still in the State. In the face of that decision it is contended that possession of State land can be made the basis of an action of trespass to try title against a person who seeks to apply to purchase the land.

This decision has inflicted no hardship on appellant. He had made no improvements when he applied to purchase the land, and there was nothing to prevent him from making an application to purchase the land immediately after his application and that of appellee had nullified each other, by being presented at the same

time for filing. He did not choose to take that action, but has risked his chances for the land on his actual occupancy of it.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.