## SPRING v. MECO PRODUCTION CO.

### No. 3873.

Court of Civil Appeals of Texas. El Paso. Nov. 9, 1939.

Rehearing Denied Dec. 14, 1939.

Cofer & Cofer, of Austin, for appellant.

Chas. F. Potter and Weeks, Hankerson & Potter, all of Tyler, for appellee.

PRICE, Chief Justice.

This action was instituted by Polk Spring, as plaintiff, against the Meco Production Company, defendant. Plaintiff, in the form of trespass to try title, specially pleading his title, sought to establish a preference right against defendant to acquire a preference right to lease for production of oil and gas a tract of 18.71 acres situated in Rusk County, Texas. Trial was before the court and resulted in a judgment in favor of defendant. Plaintiff duly perfected his appeal and the case is here for review. The parties here will, for convenience, be referred to in accordance with their designation in the trial court.

Plaintiff's first count contains the stereotyped allegations of an action in trespass to try title. The date of ejectment was alleged as the 5th day of February, 1937. Damages were sought for oil taken from the premises since the fall of 1931 by defendant in the sum of $60,000. The title under which plaintiff claimed was then set out specifically. It is alleged that the land, on the 5th day of July, 1937, was part of the unsurveyed public land of the State, and belonged to the public school fund. Further, that on said date no valid approved field notes had been filed in the Land Office; that desiring to obtain a mineral lease on said land in accordance with the Act of 1931, c. 271, p. 452, Vernon's Ann. Civ.St. art. 5421c, he filed an application with the County Surveyor of Rusk County for a survey to lease said land as unsurveyed land, and his application was duly recorded; that in due time he had a survey made by J. L. Dellis, a licensed land surveyor. This survey was made on the 30th day of July, 1937; that on August 5, 1937 the said field notes and survey were filed and recorded in the office of the county surveyor. On August 7, 1937 he filed in the Land Office his application for a survey to lease, duly and properly authenticated, accompanying same with properly certified and authenticated field notes of said survey so made by Dellis. On the 28th day of October, 1937 the Commissioner of the General Land Office duly considered his application for lease, together with the field notes and plat, and refused to accept his application on the ground that theretofore, on September 24, 1931 the land had been duly patented to one Mealy Johnson. This patent is assailed on the ground that at the time of the issuance thereof that there were numerous producing wells within five miles of the land producing oil and gas in commercial quantities; that before the issuance of the patent the Land Commissioner made no investigation to ascertain whether the land was or was not subject to sale on account of an oil well being located within five miles thereof, but same was issued by that official on the assumption that Section 5 of Article 5421c, Vernon's Annotated Statutes, Acts 1931, c. 271, § 5, did not preclude the sale of such land to one coming within the provisions thereof, even though such a well was so located. Plaintiff sought to have the patent aforesaid held invalid and that he be adjudged to have a prior right to the lease sought as against defendant with the preference provided for in Section 8 of said Article 5421c, Acts 1931, c. 271, § 8.

Defendant in due order pleaded in abatement, alleging that plaintiff was not a proper party to attack the patent, and that same had never been attacked or invalidated by the State of Texas. The plea in abatement being overruled, the defendant, subject thereto, pleaded to the merits: First, a general exception; second, not guilty. Pleading specially, the defendant alleged that it paid a valuable consideration for its lease without any notice of

defects in its title and was entitled to protection as an innocent purchaser. Improvements in good faith were likewise pleaded. It was alleged that defendant and its predecessors in title had drilled and equipped three commercially producing wells on the land at a reasonable cost of $15,000 per well; that the drilling and equipping of each well enhanced the value of the land by more than $30,000 each. In the event of recovery by plaintiff it prayed for allowance of the cost of its improvements and a lien on the land to secure the payment thereof.

On the motion of plaintiff the trial court made up and filed findings of fact and conclusions of law. These findings fairly and fully set forth the issues involved in the case with clearness and with such brevity as was consistent with the questions dealt with and are here quoted in full:

"Findings of Fact:

"1. On October 11, 1842, the State of Texas regularly and legally issued a patent to the Heirs of George Berry describing and conveying the following tract of land:

"In Rusk County, about 11-1/2 miles N 50 West from Henderson, by virtue of County Warrant No. 1724 issued by Benard E. Bee, Secretary of War on the 10th day of January, 1838.

"Beginning at a post on the west line of Amea Meltons Survey 415 varas North of her SE corner from which a pine bears N. 84 E. 4 varas a dogwood brs. south 1 vara, thence west 214 varas to a post from which a pine bears N 16 E 23 varas another bears S 26 W 12 varas; Thence North 1685 varas to the SW corner of Thompson McCarty's survey; Thence East 800 varas to the SE corner of said survey, and SW corner of John Smiths Survey 2154 varas to said Anna Meltons Survey; Thence South with same 1685 varas to the beginning.

"2. On June 8, 1874, the State of Texas regularly and legally issued a patent to C. C. Doyle, assignee of John Evans, describing and conveying the following tract of land:

"In Rusk on the waters of Rabbit Creek 12-1/2 miles N. 52 W. from Henderson by virtue of unconditional Cert. No. 306 issued by the Board of Land Comrs. of Nacogdoches County, April 7, 1845, and transferred by a regular chain of transfers to C. C. Doyle June 15, 1872.

"Beginning at the S.E. Cor. of a 320 acre sur. for J. Lindley, a stake a R.O. 6 ins. brs. N. 25 E. 5 vrs. do 12 ins. N. 80 W. 5 vrs., Thence W 1300 vrs. with the S.B. line of same to the S.W. cor. a Hickory 20 ins. brs. S. 4 E. 3 vrs. do 14 ins. brs. E. 11 vrs.; Thence S. 48 vrs. to S.E. Cor. of W. G. Tutts, 640 acres sur. a stake from which a B.J. 12 ins. brs. S 40 E. 7 vrs. a Pine 6 ins. N. 39 E. 12 vrs.; Thence E. 1252 vrs. with the N.B. Line of H. B. Dance sur. to N.E. cor. of same a Pine 30 ins. brs. N. 72 W. 15 vrs. do 12 ins. N. 81 E. 8 vrs.; Thence S. 438 vrs. the N.W. cor. of S. P. Hollingsworth's sur. a Pine brs. N. 1 vr.; Thence E. with the N. B. Line of same 40 vrs. to cor. on the W. B. Line of George Berry's, 640 acre sur.; Thence N. with the W.B. Line of sd. Berry's Sur. 486 vrs. to the place of beginning.

"3. By mesne conveyances, title to twenty acres of the Geo. Berry Survey passed to J. R. Irion, who on November 15, 1904, conveyed same to Amelia (Mealy) Johnson, such twenty acres being described as follows:

"All that certain lot, tract, or parcel of land described as follows, situated in the County of Rusk, State of Texas:

"Beginning at a stake set in ground on the West boundary line of Abe Holt's land, from which a pine brs. E. 77 W. 4 vrs. another 24 in. dia. brs. N. 80 E. 7-5/10 vrs.; (the last mentioned pine has been cut down but the mark is on stump) Thence S. along Abe Holt's West boundary line and Webb O'Guinns West boundary line 486 vrs. to Prof. Huff's N.E. Cor. said cor. is same as described in deed from B. F. Watkin to Robert Johnson, a stake set in ground from which a pine brs. W. 3 vrs.; Thence W. along Prof. Huff's N.B. Line 242 vrs. to the S.E. Cor. of a tract formerly owned by C. C. Doyle, and now owned by Henry Johnson, a stake set in ground; Thence N. along Henry Johnson's E.B. line 486 vrs. to stake set in ground from which a Red Oak brs. N. 25 E. 5 vrs. another brs. N. 80 W. 5 vrs.; Thence E. 242 vrs. to place of beginning, containing twenty acres more or less. Said land is a part of the George Berry Headright in Rusk County, Texas.

"4. On September 16, 1930, Mealy Johnson executed and delivered an oil and gas

lease on said twenty acre tract to W. E. Duffey; that such lease by regular assignments passed to defendant Meco Production Company. This lease is a regular 88 Form lease, and has never lapsed, but on the contrary, production was secured on said land, and oil and gas has been for more than seven years, and still is being produced in accordance with the terms of said lease.

"4a. On June 12, 1931, Mealy Johnson filed with the County Surveyor of Rusk County her application for a survey with a view to purchase an alleged vacant unsurveyed area, bounded on the east by the Geo. Berry Survey, and on the west by the Jno. Evans Survey; on the north by the Joe Lee land, and on the south by the S. H. Hollingsworth Surveys. That field notes were duly returned by a licensed State Land Surveyor, filed with the County Surveyor, and forwarded to the Land Office. That such field notes were approved by the Commissioner as containing 18.71 acres of vacant land, and Mealy Johnson duly filed her application to purchase same under the provisions of Revised Civil Statutes, Article 5421-C, as a tract occupied and enclosed by her in good faith as a part of her adjoining lands; that such facts of occupancy, enclosure, and good faith were established before the Land Commissioner. Mealy Johnson paid the required purchase price.

"5. On September 24, 1931, a patent was issued by the State of Texas to Mealy Johnson purporting to convey to her 18.71 acres of land which is part of the 20 acre tract above referred to and which is the same tract as is described in plaintiff's petition. That such patent was issued to Mealy Johnson under Revised Civil Statutes, Art. 5421-C, as a tract of vacant land occupied by her in good faith and held within her enclosure. That such patent reserved to the State a 1/16 free royalty interest.

"6. On October 25, 1934, Mealy Johnson gave an oil and gas leave in Standard 88 Form to Frank Byrne covering the same 18.71 acre tract described in the patent above referred to. And on February 8, 1935, he filed suit in the District Court of Rusk County, Texas, No. 10945, Frank Byrne v. Meco Production Company, in trespass to try title to recover the oil and gas leasehold in said 18.71 acres. Judgment was entered in said cause on October 3, 1935 that Frank Byrne take nothing against Meco Production Company and that it recover the seven-eighths oil and gas lease estate in said 18.71 acres. In this manner the Frank Byrne lease from Mealy Johnson passed to defendant Meco Production Company.

"7. Plaintiff's suit in this Court is based upon his claim of a preference right to purchase an oil and gas lease from the State. That his claim is based upon the following acts and papers filed by him:

"(a) On July 5, 1937, plaintiff filed an application with the Rusk County Surveyor for a survey, with a view to purchase an oil and gas lease, of the same 18.71 acre tract which he called, however, to contain 18.01 acres, which is alleged to be vacant, unsurveyed land, and paid the fee required by law.

"(b) On August 5, 1937, plaintiff caused J. L. Dellis, a licensed land surveyor, to survey and file a set of field notes on said land with the County Surveyor.

"(c) On August 7, 1937, certified copies of said application and field notes were filed in the Land Office, together with a map of said land prepared by said surveyor.

"(d) On October 28, 1937, the Land Commissioner heard such application and refused to issue a lease to plaintiff and refused to approve his field notes, because said land was not unsurveyed public school land and was not subject to lease.

"8. Plaintiff's suit is based upon his claim that the said 18.01 acres is vacant land not included in either the Geo. Berry, John Evans, or any other adjoining survey, that the patent of it to Mealy Johnson was void because it was within five miles of a producing oil well at the time her patent was issued on September 24, 1931.

"9. Plaintiff failed to offer any evidence, except the approved field notes of the Mealy Johnson survey, which the Court deems insufficient to establish the existence of the vacancy. There was insufficient evidence to rebut or contradict or show that there was any mistake in the field note calls of the John Evans Survey for adjoinder with the George Berry Survey; and the Court finds from the preponderance of evidence before it that there is no vacancy between said surveys and that the 18.01 acre tract involved in this suit is not vacant unsurveyed school land, and was not such on the date plaintiff initiated his claim.

"10. There was no evidence offered to show that on June 12, 1931, there was an oil well within five miles of this land, producing or capable of producing oil or gas in paying quantities.

"11. The Court finds, however, that on September 24, 1931, there was a well within five miles of said land which was then producing large quantities of oil, but there was no evidence to show what was the cost of drilling, equipping and operating such a well, or to show that it was producing a sufficient quantity of oil or gas to pay a profit over such expense; nor was any evidence offered to show that such well produced a sufficient quantity of oil or gas to pay a profit over operating expenses.

"12. The Court finds that at the time plaintiff made his application for survey to lease, the land in controversy was listed upon the records of the Land Office as school land under number S.F. 13255, as having been surveyed for and patented to Mealy Johnson.

"13. The Court finds that at the time plaintiff made his application for survey to lease the land in controversy it had been delineated upon the official map of the Land Office as surveyed land.

"14. The Court finds that prior to the time plaintiff made his aforesaid application for survey to lease, the said land had already been surveyed under the application of Mealy Johnson and that the field notes made for her had been approved by the Land Commissioner and were on file in the Land Office.

"15. The former Land Commissioner, Mr. Walker, testified without contradiction that he held such office at the time of the hearing upon the Mealy Johnson application in September, 1931, and that he conducted such hearing and awarded the land to her without hearing evidence upon or determining the issue of how close a producing well was at the time, or as to whether there was a commercially producing well; that he did not pass on this question.

"16. Defendant has drilled three producing oil wells upon this land at a cost of $15,000.00 per well. Such cost was reasonable and necessary at the time the wells were drilled. These wells were drilled by defendant in good faith, without knowledge or notice of any of the defects alleged in plaintiff's petition. The drilling of the wells enhanced the value of the lease and land by more than the cost of drilling said wells; that is, the drilling of each well increased the value of the lease by more than $15,000.00 over what the value of the lease had been before the well was drilled.

"Conclusions of Law

"1. The Court reiterates the conclusions of law set out in its final judgment filed in this cause, and the parties are given their same exceptions there noted.

"II. From the facts above found, the Court concludes that the 18.01 acres was not vacant or unsurveyed public school land at the time plaintiff filed his application for survey to lease and is not such at this time. It was surveyed land all during such time.

"III. Plaintiff was not a discoverer of an unsurveyed area of school land when he filed his application for survey nor when he caused the land to be surveyed because all the facts concerning such land were on file in the Land Office; the land had already been listed as school land in the Land Office, and plaintiff contributed nothing of value to the State.

"IV. Further, plaintiff never qualified under Section eight of Article 5421–C, because prior to the time he filed upon it, it had been delineated upon the official Land Office map as surveyed school land.

"V. The Court finds that since no suit was filed by the State, or any other party within one year from the issuance of the Mealy Johnson patent, that plaintiff cannot now attack it.

"VI. The Court finds that the law is with the defendant, and that plaintiff should not recover."

Plaintiff requested findings from the Court consistent with his vital contentions in the case, which findings were refused. The findings are attacked on various points by assignments of error with propositions relative thereto.

Both plaintiff and defendant rely on the provisions of the Acts of 1931 of the Forty-Second Legislature, c. 271, page 452, now Vernon's Annotated Statutes, Article 5421c. This general statement should be qualified and limited by stating that defendant likewise relied on the title of Mealy Johnson alleged to exist prior to the patent to her.

Let us first consider the issues involved here on the assumption that at the time of the application of Mealy Johnson on the

12th day of June, 1931, the land was unsold and unsurveyed school land. Her survey was made by Dellis, a licensed State surveyor. On the filing of the field notes the same were approved, and that thereafter the land involved was shown on the official map and other records of the Land Office as surveyed school land. The plaintiff's survey covered exactly the same land as the Mealy Johnson survey, and was made by the same surveyor. Mealy Johnson's claimed right to the land was founded on a purchase based on Section 5 of said Article 5421c, Acts 1931, c. 271, § 5; the claimed right of plaintiff on Section 8 of the same article, Acts 1931, c. 271, § 8.

It has been established by a long line of decisions that one claiming an interest in public land, even though said interest be merely inchoate, may maintain an action against another asserting an adversary interest in the same land and if such a one establishes superiority of his right over that of his adversary, judgment follows vindicating that right which is at least binding on the adversary. Nations v. Miller, 107 Tex. 616, 183 S.W. 153. On the other hand, in order to successfully maintain such action, the plaintiff must have at least an inchoate right in the land superior to that of his adversary. Fellers v. McFatter, 46 Tex.Civ.App. 335, 101 S.W. 1065.

Counsel for plaintiff by oral argument and by brief insists that the cases of Stanolind Oil & Gas Co. v. State, Tex.Civ.App., 114 S.W.2d 699, Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, on rehearing 129 Tex. 370, 104 S.W.2d 3, and Short v. W. T. Carter & Bro., Tex.Sup., 126 S.W.2d 953, conclusively determine this case in favor of plaintiff. Let us, then, carefully consider what those cases decide insofar as applicable here. Stanolind Oil & Gas Co. v. State, supra, is important, in that it construes the second paragraph of Section 8 of Article 5421c, Acts 1931, c. 271, § 8. This portion of Section 8 reads as follows: "Any person who discovers an unsurveyed area of school land which has not been listed on the records of the Land Office as school land, and is not in actual conflict on the ground with land previously sold or appropriated and which appears on the official Land Office map as unsurveyed land, may apply in writing to the county surveyor and have the same surveyed, and after the field notes thereof have been returned to the Land Office and approved and filed with the Land Commissioner, shall have a preference right for sixty (60) days thereafter to purchase a mineral lease thereon at the minimum price fixed by the Land Commissioner, in addition to the other consideration provided herein."

In Short v. W. T. Carter & Bro., supra, [126 S.W.2d 958], Judge Smedley quotes from the opinion in Stanolind Oil & Gas Co. v. State, supra, as follows: "The discovery alluded to in the 1931 act we think clearly means the discovery by 'any person' to the land commissioner, by means of an application to lease under the 1931 act. * * * The underlying policy of the 1931 act was to encourage private individuals, at their own expense, to bring into the school fund mineral lands properly belonging to the fund which had not theretofore been listed as such. The benefits of the statute enured to the one who discovered that the land was not so listed, and made application in compliance with the statute. This is, we think, the only practical construction of the statute which would effectuate its purpose. Any other construction would lead to interminable confusion."

In the course of the opinion in Short v. W. T. Carter & Bro., supra, Judge Smedley uses this language: "It is our opinion that, in order to give effect to the intention of the Legislature as disclosed by the entire Act and to avoid contradiction in a literal interpretation of language used in Section 8, which would defeat the declared purpose to provide for and regulate the sale of all public school land and the disposition and sale of minerals in all unsold public school land, surveyed and unsurveyed, Section 8 of the Act is properly construed as authorizing the Commissioner of the General Land Office to execute mineral leases upon applications filed under that section of the Act when, after examination of the field notes filed, the official maps and other records of the General Land Office, he has determined that the area applied for and described in the field notes is not listed on the records of the Land Office as school land and is unsold, unsurveyed land as defined in Section 3 of the Act, that the field notes are correct, and that the applicant has discovered the area and taken the several steps and made the payment as prescribed by the Act."

The case of Caples v. Cole, supra, is in many respects similar to the case we have here. There, as here, there was a patent issued under Article 5421c, and then a subsequent application for an oil and gas lease. The application for the lease was rejected by the Commissioner, as here, on the ground that the said land had been theretofore sold to the patentee.

In Caples v. Cole, supra, the Supreme Court held: (1) that land within five miles of a producing oil and gas well, whether surveyed or unsurveyed, was not subject to sale, but only to lease; (2) that the subsequent applicant for the lease was precluded by the one year's statute, Vernon's Ann.Civ.St. art. 5329, subd. 4 from assailing the purchase of the patentee; (3) that a subsequent applicant for a lease might, in a suit against a prior patentee, where the land was not subject to patent under the law, assert his right in a trespass to try title suit against the patentee. On rehearing it was held that, in a case where there was an entire absence of exercise of discretion on the part of the Commissioner in determining whether the land was within five miles of a producing oil well or not, the one year statute would not preclude an attack—that the one year statute did not apply. In that case it was held that there was no evidence that the Commissioner had not considered the question as to the location of the well in relation to the land involved and determined that it was not in five miles of the land, and hence the one year statute did apply.

We believe that one of the controlling and determinative questions in this case is whether or not the land involved herein was unsurveyed school land within the definition of Section 3 of Article 5421c, Acts 1931, c. 271, § 3, and did plaintiff discover same by his application for a survey preliminary to his application to purchase an oil and gas lease, within the meaning of Section 8 of the same article, Acts 1931, c. 271, § 8. In determining this question the case of Landry v. Robison, 110 Tex. 295, 219 S.W. 819, should be carefully weighed and considered. In that case Judge Greenwood wrote the opinion for the Supreme Court. Briefly stated, the facts were substantially as follows: One Duffy made application to prospect for and develop petroleum and natural gas on 195 acres of land in Harris County in the bed and channel of the San Jacinto River, a navigable stream. The application was regular in form and survey was duly made and all requisite steps taken. Field notes of the survey were filed in the General Land Office, and on April 9, 1916, the Commissioner approved same and issued the permit sought. The proceedings were all taken in conformity to General Laws of Thirty-Third Legislature, (1913) c. 173, page 409.

Landry filed with the County Surveyor on June 20, 1917 his application to prospect for and develop petroleum and natural gas on 156.3 acres of the 195 acres covered by the Duffy permit. Landry's application was under the law passed by the Thirty-Fifth Legislature in 1917, c. 83, p. 158. The necessary steps to perfect Landry's rights under that law were performed. On July 6, 1917, Duffy's permit was cancelled by the Commissioner for failure to comply with the terms thereof. On July 6, 1917, one Meador filed with the County Clerk of Harris County written application for right to prospect for and develop petroleum and natural gas on the 195 acres surveyed for Duffy. The Meador application was filed on the theory that the Duffy application changed the land from unsurveyed land to surveyed land, and the field notes of the Duffy application were used as a basis for the Meador application. It was held the Act of April 9, 1913, did not authorize the issuance of the Duffy permit, in that the bed of a navigable stream was not included in the provisions thereof. Further, the Duffy application, survey and field notes were void and that at the time of the Landry application the land was unsurveyed land within the meaning of the Act of 1917; that at the time of the Duffy survey the law forbade a survey for an individual of any part of the bed of a navigable stream. See Article 5302, Vernon's Annotated Statutes.

It is to be further noted that the Act of 1917 did not define "surveyed" or "unsurveyed" school lands. The terms were merely used without definition. Article 5421C, Section 3, Acts 1931, c. 271, § 3, is as follows: "Surveyed lands within the terms of this Act is defined to be all tracts or parts of tracts heretofore surveyed either on the ground or by protraction, and set apart for the public school funds and which is unsold, and for which field notes are on file in the General Land Office or which may be delineated on the maps of said office as such, and un-

surveyed land is defined to be all areas not included in surveys on file in the General Land Office or surveys delineated on the maps thereof."

Paragraph 2 of Section 8 of this Article Acts 1931, c. 271, § 8, has been heretofore quoted herein.

■ At the time of the Mealy Johnson application the land was subject to a sale. It might be that if an oil and gas well was in five miles thereof the surface was not to be sold. A lease of the underlying minerals constitutes a sale. There was no express law forbidding the survey. A survey of the surface was necessary if the minerals alone were to be sold.

■ When plaintiff applied to lease with the privileges conferred by Section 8, the land at least did not come within the literal provisions of Section 3 as to what constituted unsurveyed lands. Construing Section 3 literally, it did come within the provision as to what constituted surveyed land. The land was delineated on the map of the General Land Office; it was included in an approved survey on file in the General Land Office. This survey had been made by a licensed surveyor. The Land Office register showed the land as mineral and dry grazing land belonging to the public school fund. See Sibley v. Robison, 110 Tex. 1, 212 S.W. 932; Frank v. Robison, 117 Tex. 512, 8 S.W.2d 653, loc. cit. 654.

After the filing and approval of the Mealy Johnson's field notes, the Commissioner at all times regarded this land as a part of the public school land. The patent to Mealy Johnson evidences this, and the State holds the purchase price paid by Mealy Johnson of something over $350 as part of the school funds.

It was not the application of plaintiff that discovered this area as public school land. The application of Mealy Johnson accomplished the discovery.

In view of the definition given as to surveyed and unsurveyed school lands by Section 3 of Article 5421C, Acts 1931, c. 271, § 3, and the purposes of the passage of Section 8 of that Article, Acts 1931, c. 271, § 8, as declared by the cases of Stanolind Oil & Gas Co. v. State, supra, and Short v. W. T. Carter & Bro., supra, we hold that the plaintiff was not a discoverer of the area in question within the meaning of Section 8 of Article 5421C, Acts 1931, c. 271, § 8. Further, not being a discoverer, and the land not being unsurveyed school

land at the time of his application under Section 8 of said Article, his application gave him no right to purchase an oil and gas lease on the land in question. On the filing and approval of the Mealy Johnson field notes and the notation of the survey on the map, the land ceased to be unsurveyed public school land within the meaning of Section 8.

Our holding on the issues discussed disposes of the case, but we will briefly discuss two other assignments presented by plaintiff.

■ In paragraph nine of the court's findings of fact, supra, it was found in substance by the court from a preponderance of the evidence that there was no vacancy between the surveys surrounding the 18 acres in question. We take it that plaintiff does not seriously contend that the burden did not rest upon him to establish such vacancy.

Plaintiff asserts that the action of the Land Commissioner in accepting the Mealy Johnson field notes was some evidence of the vacancy. This contention is unquestionably sound insofar as defendant claims under the title emanating from the Mealy Johnson patent. Insofar as defendant claims title emanating from the State prior to the Mealy Johnson patent, we do not believe this contention sound. The prior rights, if any, of Mealy Johnson, except as to the surface, were vested in defendant prior to the Mealy Johnson patent. Suppose the State, prior to the Mealy Johnson patent, had sued defendant to recover the land, the burden then would have been upon the State to establish the vacancy. If it be conceded that all proceedings leading up to and culminating in the Mealy Johnson patent were void, as contended by plaintiff, defendant's claim thereunder would be some evidence against it as to the existence of the vacancy, but not conclusive. We have, however, heretofore held that the acceptance of the field notes, together with the alteration of the map and the listing of the land are sufficient to constitute the land a surveyed area claimed by the State as public school land within the meaning of Section 3 of Article 5421C, Acts 1931, c. 271, § 3.

Plaintiff asserts that the field notes contained in the patents to the senior surveys alleged to surround the vacancy in and of themselves are sufficient to establish the vacancy. The doctrine is invoked that in some cases, in the construction of the field

notes, a call for course and distance may control over the call for the line of another survey. State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228; Humble Oil & Refining Co. v. State, Tex.Civ.App., 104 S.W.2d 174, writ refused, and authorities there cited.

'If vacancy there be, it is bounded by the Joe Lee survey on the north, by the Hollingsworth on the south, the George Berry survey on the east, and the John Evans survey on the west. Insofar as the question is as to the relative position of these four surveys as established on the ground, we are left to a deduction from the descriptions contained in the patents. These four surveys were all senior to the Mealy Johnson survey. No expert witness for either party interpreted the calls in these patents.

The Berry patent was senior to the patent for the John Evans survey. The east to west call in the patent of the John Evans survey is as follows: "Thence E. with the N.B. Line of same (Hollingsworth) 48 vrs. to cor. on W.B. Line of George Berry's 640 acre Sur." In fact to extend the line called for to the other survey would require 282 instead of 48 varas. The variance is so great that we are led to the conclusion that the surveyor did not know the true location of the Berry line, and the call was made by mistake. See authorities supra.

We sustain this attack on the findings for the purposes of this case and hold that under the evidence here presented a vacancy at the time of the Mealy Johnson application was established.

■ Plaintiff vigorously assails paragraphs ten and eleven of the trial court's findings in substance that there was no evidence to show that there was an oil well within five miles of this land at the time of the Mealy Johnson application producing, or capable of producing, oil and gas in paying quantities. Further contention is made that, under Section 6 of Article 5421C, Acts 1931, c. 271, § 6, a producing well in five miles of an unsurveyed area is all that is required to withdraw such unsurveyed area from sale as distinguished from lease. The opinion in Caples v. Cole, supra, is cited as drawing this distinction as between a surveyed area and an unsurveyed area. The deduction we drew from that case was that the expression "producing oil or gas in commercial quantities" and "producing oil or gas well," [129 Tex. 370, 102 S.W.2d 176] meant substantially the same thing. We think the same deduction might reasonably be made from Humble Oil & Refining Co. v. State, supra.

Witnesses W. T. Williams and J. M. Wood testified as to the production of oil wells within five miles of the land. The witness Williams, by reason of representing parties interested in the same locality, and having exact knowledge of the distances involved, testified that there was, during the month of September, 1931, more than one well within five miles of the land producing oil in commercial quantities. On cross-examination he named several wells. He spoke of one well about forty yards easterly from the land which caught fire while he was there and flowed large quantities of oil into the flame for about two weeks. His testimony that the wells were producing oil in commercial quantities was perhaps a conclusion and as such was properly disregarded by the trial court. His testimony, however, was not without probative effect. Witness Wood, the County Surveyor, in June, July and August, testified he had production on the Lindley tract; that one of his wells would make as much as you wanted it to make. In response to a question, "Would they (referring to his production on the Lindley tract) make as much as 1000 barrels per day?" responded, "I imagine 5000." The Lindley tract was certainly within five miles of the land in controversy. The testimony of these two witnesses was not controverted. This land, under the testimony, is part of the great East Texas oil field. Under the testimony, in September, 1931, there were oil wells all around it. We think and find, under the evidence, that at the time of the sale to Mealy Johnson there were wells producing oil in commercial quantities within five miles of the land.

Except as hereinbefore indicated, we adopt the findings of the trial court as our own.

It is ordered that the judgment of the trial court be affirmed.

### On Motions for Rehearing.

Both appellee and appellant have filed motions for rehearing herein. We shall first dispose of the motion of appellee.

■ Appellee has briefed one ground of his motion; that is, that we were in error in the original opinion in holding that the evidence, including the maps in-

troduced and the field notes contained in the surrounding and adjacent surveys established the vacancy in question as a matter of fact. Our holding that the east to· west call of the Evans' patent to west line of George Berry's survey being only 48 varas and the call in the Hollingsworth survey, its north line, gave this distance as 282 varas, demonstrated that the position of the west line of the Berry's survey was unknown to the surveyor making the Evans' survey, and the call for that adjoinder was a mistake, was perhaps erroneous. The maps and field notes contained in the patent are perhaps in and of themselves insufficient to establish the vacancy claimed. This discrepancy may have been an element influencing the Land Commissioner in his decision on the Mealy Johnson application that there was in fact, a vacancy. Its influence on the Commissioner's action may have been small or great. In reality the extent of its influence, if any, is only conjectural.

It is our opinion the field notes contained in the various patents and maps introduced are, as we have stated, insufficient in and of themselves to establish the vacancy. We think the converse of the proposition is likewise true: In and of themselves they are insufficient to establish that the vacancy does not exist. In fact, the evidence above mentioned considered alone does not raise the issue.

The approval of the Mealy Johnson field notes prima facie established the vacancy. Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259. The field notes in the Mealy Johnson patent and in the survey made for plaintiff are practically the same. The evidence failed to overcome this prima facie showing. Our holding is not based upon the fact that defendant holds under the Mealy Johnson patent. Defendant claims under title emanating from Mealy Johnson prior to the patent. Mealy Johnson's subsequently acquired rights may have vested in the defendant by virtue of the warranty clause in the lease and the judgment in the case of Byrne v. Meco Production Company, but no adoption of this survey is shown by the defendant further than to introduce same in evidence.

■ Our construction of the opinion in Weatherly v. Jackson, supra, is that where the Land Commissioner approves the field notes and awards the land to the applicant as school land the presumption is that the facts existed that made the action lawful. The fact necessary here to justify the action was that prior to the application and award the land was unappropriated, unsurveyed public school land. It is true that this presumption is but prima facie and subject to rebuttal. Under the evidence here we do not believe this presumption has been overcome.

Appellant in his motion for rehearing vigorously assails the holding that he was not a discoverer of the area in question within the meaning of Section 8 of Article 5421c, Vernon's Ann.Civ.St., Acts 1931, c. 271, § 8. Landry v. Robison, supra, discussed in the original opinion, is cited as authority establishing that the award to Mealy Johnson was utterly void. Further, that under that case the first Dellis survey and the approval thereof by the Land Commissioner and classification of the land as public school land were likewise insufficient to constitute this land a surveyed area within the meaning of Article 5421c, Acts 1931, c. 271. It is, however, contended by the appellant, as we understand his position, that the action on the Mealy Johnson application and the survey in connection therewith were sufficient to establish the vacancy claimed by plaintiff. To our minds the distinguishing feature of Landry v. Robison is that there the survey showed on its face it was made in defiance of existing law. At the time of the survey neither the surface nor the mineral thereunder was subject to sale. The survey lines crossed the bed of a navigable stream. In this case the area involved was subject to sale, if a mineral lease be considered a sale. It was unquestionably public school land.

■ If this area was unsurveyed public school land it was discovered to the State through the Mealy Johnson field notes which were approved by the Land Commissioner. It was shown on the record and official map as public school land thereafter; the Land Commissioner had dealt with it as school land; Dellis, the licensed State surveyor, was in a certain measure an agent of the State when he made the Mealy Johnson survey. We cannot believe that the Polk Spring application constituted a discovery within the meaning of Section 8 of Article 5421c, Acts 1931, c. 271, § 8, as same has been construed by the Supreme Court. In our opinion a discovery within the meaning of said Section 8 means something more than the discovery of a defective title to a tract of surveyed land, the title to which has at least been attempted to be conveyed by the State. Suppose the

State had instituted suit prior to plaintiff's application and recovered this land for the school fund. Could then plaintiff make an application to lease the land as undiscovered school land and obtain a preference right to lease same? The answer to the question is too obvious for discussion. The opinion on rehearing in Caples v. Cole, discussed in the original opinion, was handed down April 15, 1937. The motion for rehearing in Humble Oil & Refining Co. et al. v. State, supra, was denied April 14, 1937, writ refused June 23, 1937. The two cases both appear in 104 S.W. Second Series. Appellant's application for survey was filed on the 5th day of July, 1937. The situation mentioned in our question might have, but did not, arise.

Short v. W. T. Carter & Bro., Tex.Sup., 126 S.W.2d 953, and Stanolind Oil & Gas Co. v. State, Tex.Civ.App., 114 S.W.2d 699, are unquestionably authority on the point in question that in order there be a discovery and a discoverer that the area need not be shown on the official Land Office map as unsurveyed school land. We do not construe them as authority for the proposition that there may be a discovery of land shown on the official map as surveyed school land and which the State has at least attempted to sell.

Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 177, was decided on subdivision 4 of Article 5329, Vernon's Ann.Civ.St. As to the question as to whether the land was surveyed or unsurveyed school land, it says: "Therefore, for the purposes of this opinion, it is immaterial whether the land involved here is classed as surveyed or unsurveyed school land."

The motions of appellee and appellant for rehearing are overruled and likewise appellant's motion to certify.